# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-3608

_____

Joan Peter; Sarah Peter, a minor, by and   *
through her parent and natural guardian   *
Joan Peter,   *
  *
      Plaintiffs,   *
  *
Krista Westendorp; Douglas Westendorp;*
Aaron Westendorp, a minor, by and   *
through his parents and natural guardians *
Krista Westendorp and Douglas   *
Westendorp,   *
  *
      Appellants,   *
  *  Appeal from the United States
      v.   *  District Court for the
  *  District of Minnesota.
Robert Wedl, Commissioner, Minnesota   *
Department of Children, Families and   *
Learning; Arne Carlson, Governor, State *
of Minnesota; Independent School   *
District, No. 877, Buffalo, Minnesota,   *
  *
      Defendants,   *
  *
  *
Independent School District, No. 273,   *
Edina, Minnesota,   *
  *
      Appellees.   *

_____

Submitted: June 11, 1998
Filed: September 15, 1998

_____

Before BEAM, ROSS, and MAGILL, Circuit Judges.
_____

MAGILL, Circuit Judge.

Aaron Westendorp is a severely disabled child who requires a full-time paraprofessional to function in a school classroom.  Minnesota Independent School District No. 273 (ISD No. 273) refused to provide Aaron with a paraprofessional as long as he attended a private religious school, and Aaron's parents brought this suit for damages and equitable relief against the school district.  The Westendorps alleged that, by denying Aaron a paraprofessional in his private religious school, ISD No. 273 violated their rights of free speech, free exercise of religion, and equal protection under the First and Fourteenth Amendments, as well as their rights under the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. §§ 2000bb to 2000bb-4 (1994), the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400-1491o (1994), and Minnesota state law.  The district court granted summary judgment in favor of ISD No. 273, and Aaron's parents now appeal.  We reverse.

## I.

Aaron is a twelve-year-old boy who lives in Edina, Minnesota.  Aaron suffers from a brain stem lesion which causes spastic quadriparesis, a partial paralysis from the eyes down.  Although Aaron has normal cognitive abilities, he cannot speak, and communicates through finger signing.  He breathes through a tracheostomy tube and

eats through a gastrostomy tube. Because of his severe physical disabilities, Aaron requires a full-time paraprofessional while in school. The paraprofessional assists Aaron with his disabilities, translates his finger spelling, and adapts classroom tasks for Aaron. The cost of a paraprofessional is approximately $10,000 per year, and is the same whether Aaron attends a public school or a private school.

Aaron's parents wish him to attend Calvin Christian School, a K-8 private religious school in Edina. Aaron's two sisters attended Calvin Christian School, and Aaron was able to attend the school from 1991 until 1994. During this time, the Westendorps' church paid for Aaron's paraprofessional. When the Westendorps changed churches, however, the burden to pay for the paraprofessional fell on them. With help from relatives, the Westendorps could afford Aaron's tuition, but they could not afford the cost of a paraprofessional. Because ISD No. 273 would not pay for a paraprofessional for Aaron if he attended Calvin Christian School, the Westendorps were forced to transfer Aaron to a public school in Edina. Aaron has attended an Edina public school, with the services of an ISD No. 273-funded paraprofessional, from 1994 until the present.

When ISD No. 273 first refused to provide Aaron a paraprofessional if he attended Calvin Christian School, Minnesota law prohibited school districts from providing such services at private religious schools. See Minn. R. 3525.1150 subpt. 2 (allowing special education services only at a "neutral site"); Minn. Stat. § 123.932 subdivision 9 (defining "neutral site" as "a public center, a nonsectarian nonpublic school, a mobile unit located off the nonpublic school premises, or any other location off the nonpublic school premises which is neither physically nor educationally identified with the functions of the nonpublic school"). Wayne Erickson, the manager of the Division of Special Education in the Minnesota Department of Children, Families and Learning, explained that, under this rule, a school district "[m]ay not provide special instruction services in a nonpublic school if that nonpublic school is a religious or sectarian school." Erickson Dep. (May 22, 1997) at 46, reprinted in J.A. at 270. By

contrast, where a student in a private nonreligious school required special education services that "can very easily be provided in the child's regular classroom without impairing [the child's] ability to operate," Erickson stated that "it would be the state's policy it should be provided in the regular classroom." Id. at 57-58, reprinted in J.A. at 281-82; see also Minn. R. 3525.1150 subpt. 1 (providing that school districts must "make available special education to all students who are disabled regardless of whether they attend a nonpublic school").

Penny Kodrich, the Director of Special Services for ISD No. 273, acknowledged that Minnesota Rule 3525.1150 prohibited ISD No. 273 from providing services to Aaron at Calvin Christian School, see Kodrich Dep. (July 17, 1997) at 68-69, reprinted in J.A. at 453-54, and that Minnesota Rule 3525.1150 was an "independent rationale for the School District's policy" of refusing services at private schools. See Kodrich Aff. (July 17, 1997) ¶ 6, reprinted in J.A. at 152-53. However, Kodrich also asserted that, in order to ensure the quality and integration of services and to contain costs:

> It has been the consistent policy of Independent School District 273 to not provide direct on-site special education and related services to disabled school-age students who have been placed by their parents or guardians in private schools. That policy applies to all private school[s] regardless of whether they are religious or secular in nature.

Id. ¶ 2, reprinted in J.A. at 150.

Despite its unwritten "consistent policy" of not providing special education services to students at private schools, ISD No. 273 has provided special education services to students at private nonreligious preschools, see ISD No. 273's Answers to Pls.' First Set of Interrogs. (June 15, 1997) at 2, reprinted in J.A. at 521 ("the School District has provided students who were placed by their parents in non-sectarian private preschool programs with direct on-site special education and related services"), as well

-4-

as at the homes of home-schooled disabled children. <u>See</u> Kodrich Dep. at 122, <u>reprinted in</u> J.A. at 507. While Kodrich admitted that at least one other disabled student had been denied paraprofessional services at a private religious school by ISD No. 273, Kodrich could not recall any student who had been denied paraprofessional services at a private nonreligious school. <u>See</u> <u>id.</u> at 73-78, <u>reprinted in</u> J.A. at 458-63.

On July 26, 1996, the Westendorps brought this suit against ISD No. 273 and the State of Minnesota, seeking injunctive and declaratory relief and damages. The Westendorps were joined in their suit against the state by the parents of Sarah Peter, a disabled Minnesota child who was similarly denied special education services at a private religious school by Independent School District No. 877 (ISD No. 877).

On March 26, 1997, the district court granted summary judgment against the Westendorps on their IDEA claim. <u>See</u> <u>Peter v. Johnson</u>, 958 F. Supp. 1383, 1399-1400 (D. Minn. 1997). The district court concluded "that the statute and its regulations do not require the State defendants or local school districts to provide on-site paraprofessional services to the plaintiffs at private schools as a component of their individualized education program." <u>Id.</u>

On June 23, 1997, the Supreme Court held that public school districts may provide secular teaching services at a private religious school without offending the Establishment Clause. <u>See</u> <u>Agostini v. Felton</u>, 117 S. Ct. 1997, 2016 (1997). Following this decision, the State of Minnesota, ISD No. 273, and ISD No. 877 stipulated to an injunction against the enforcement of Minnesota Rule 3525.1150. On August 5, 1997, the district court granted a preliminary injunction providing that "[t]he State Defendants are hereby enjoined and restrained from enforcing Rule 3525.1150 insofar as it prohibits provision of special education services to Plaintiffs Sarah Peter and Aaron Westendorp on the premises of a private religious school." Order (Aug. 5, 1997) at 1, <u>reprinted in</u> Appellants' Addendum at 48. Minnesota Rule 3525.1150 was subsequently amended to no longer distinguish between private religious schools and

private nonreligious schools. Following the district court's grant of the injunction, ISD No. 877 agreed to provide services to Sarah Peter at her private religious school, and the Westendorps and ISD No. 273 became the sole parties to this suit.

Despite the injunction and ISD No. 877's change of heart, ISD No. 273 continued to refuse to provide services to Aaron if he attended Calvin Christian School. The district court denied a preliminary injunction requiring ISD No. 273 to provide such services, see Order (Aug. 12, 1997) at 9, reprinted in Appellants' Addendum at 58, and subsequently granted summary judgment against the Westendorps' remaining constitutional and state law claims. See Order (Sept. 2, 1997) at 2-3, reprinted in Appellant's Addendum at 60-61.

The Westendorps now appeal the grant of summary judgment against them on their free speech, free exercise, equal protection, and IDEA claims. Following the Supreme Court's decision that RFRA is unconstitutional as applied to state law, see City of Boerne v. Flores, 117 S. Ct. 2157, 2172 (1997), the plaintiffs abandoned their RFRA claim. See Order (Aug. 12, 1997) at 4, reprinted in Appellants' Addendum at 53. In addition, the Westendorps have abandoned their state law claims for prospective relief, see Pls.' Fed. R. App. P. 28(j) Letter (June 5, 1998) at 1, following the amendment of Minnesota's special education provisions. See 1998 Minn. Sess. Law Serv. Ch. 398 (H.F. 2874) art. 2, § 53(a) (West) (providing that Minnesota law will no longer "impose requirements that exceed federal law").

## II.

This Court reviews the district court's grant of summary judgment de novo. See Kraft v. Ingersoll-Rand Co., 136 F.3d 584, 585 (8th Cir. 1998). Summary judgment is only proper if, taking the evidence "in the light most favorable to the nonmoving party, there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law." Id. at 586. "At the summary judgment stage, the court should not

weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter.  Rather, the court's function is to determine whether a dispute about a material fact is genuine . . . ."  Quick v. Donaldson Co., 90 F.3d 1372, 1376-77 (8th Cir. 1996).  "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party."  RSBI Aerospace, Inc. v. Affiliated FM Ins. Co., 49 F.3d 399, 401 (8th Cir. 1995).

In their complaint, the Westendorps alleged that ISD No. 273's "policies and actions violate Plaintiffs' rights under the equal protection clause of the Fourteenth Amendment to the U.S. Constitution."  Compl. (July 26, 1997) ¶ 51, reprinted in J.A. at 29.  We conclude that the district court erred in granting summary judgment against the Westendorps on this claim.

Prior to the district court's injunction against the enforcement of Minnesota Rule 3525.1150 and the rule's subsequent amendment, Minnesota Rule 3525.1150 explicitly discriminated against children who attended private religious schools.  While children who attended private nonreligious schools could receive government-funded special education services directly at their private schools, students like Aaron could not. Government discrimination based on religion violates the Free Exercise Clause of the First Amendment, see Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 532 (1993) ("the First Amendment forbids an official purpose to disapprove of a particular religion or of religion in general"), the Free Speech Clause of the First Amendment, see Rosenberger v. Rector and Visitors of Univ. of Va., 515 U.S. 819, 830 (1995) ("ideologically driven attempts to suppress a particular point of view are presumptively unconstitutional in funding, as in other contexts" (quotations omitted)), and the Equal Protection Clause of the Fourteenth Amendment.  See Native American Council of Tribes v. Solem, 691 F.2d 382, 384 (8th Cir. 1982); cf. Romer v. Evans, 517 U.S. 620, 633 (1996) ("Equal protection of the laws is not achieved through indiscriminate imposition of inequalities. . . . A law declaring that in general it shall be

more difficult for one group of citizens than for all others to seek aid from the government is itself a denial of equal protection of the laws in the most literal sense." (quotations and citations omitted)).

"[I]f the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral, and it is invalid unless it is justified by a compelling interest and is narrowly tailored to advance that interest." Lukumi, 508 U.S. at 533 (citation omitted). The only compelling interest identified by the State of Minnesota to justify Minnesota Rule 3525.1150 was that the rule was necessary to avoid a violation of the Establishment Clause. See Tr. of Mot. Hr'g (Nov. 8, 1996) at 35-36, reprinted in J.A. at 190-91. This position was highly questionable in light of the Supreme Court's decision in Zobrest v. Catalina Foothills School District, 509 U.S. 1, 10 (1993) (holding that the government can provide a sign language interpreter to a disabled student at a private religious school without violating the Establishment Clause), and the State of Minnesota abandoned this argument following the Supreme Court's decision in Agostini, 117 S. Ct. at 2016 (holding that the Establishment Clause was not violated when public teachers taught nonreligious subjects at private religious schools). Because Minnesota Rule 3525.1150 cannot be justified as a narrowly tailored means of avoiding a violation of the Establishment Clause, it violated the plaintiffs' rights to free exercise of religion, free speech, and equal protection, and the district court properly enjoined its enforcement.

If ISD No. 273 denied a paraprofessional to Aaron Westendorp at Calvin Christian School because of Minnesota Rule 3525.1150's unconstitutional distinction between private religious schools and private nonreligious schools, or otherwise because of the religious nature of Calvin Christian School, then ISD No. 273's action is illegal and the plaintiffs are entitled to the relief that they seek. ISD No. 273 conceded that it relied on Minnesota Rule 3525.1150 when it denied services to Aaron at Calvin Christian School, see Kodrich Aff. ¶ 6, reprinted in J.A. at 152-53 (Minnesota Rule 3525.1150 was an "independent rationale for the School District's policy"), and

further conceded that Minnesota Rule 3525.1150 prevented it from providing services to Aaron at Calvin Christian School. See Kodrich Dep. at 68-69, reprinted in J.A. at 453-54. ISD No. 273 nevertheless contends that in denying services to Aaron it "followed its long-standing policy, which it maintains today, of not providing direct, on-site special education and related services at private schools, regardless of their religious or secular orientation." Appellee's Br. at 3.

ISD No. 273's invocation of a "long-standing policy" rings hollow in light of its actual practice of providing services to disabled children at private nonreligious preschools and at home schools. Indeed, ISD No. 273's alleged policy has not been used to deny students at private nonreligious schools paraprofessional services, and appears to manifest itself only when disabled children at private religious schools request these services. While ISD No. 273 has alleged that it created its policy to ensure the quality and integration of services and to contain costs, see Kodrich Aff. ¶¶ 3-5, reprinted in J.A. at 150-52, this appears to be a mere ad hoc rationalization of an irrational practice. ISD has not attempted to explain how the goals of its alleged policy are served by denying services to students at private religious schools but allowing these services to students at home schools or at private nonreligious preschools, and there is no evidence that any of these goals are furthered by denying Aaron a paraprofessional at Calvin Christian School. It is undisputed that the cost to ISD No. 273 is the same whether it funds a full-time, one-on-one paraprofessional for Aaron at Calvin Christian School or at a public school, and ISD No. 273 has not argued that the services of a paraprofessional would be of a lower quality at Calvin Christian School than if they were provided by the same paraprofessional at a public school, or that the integration of Aaron's services would somehow be impaired at Calvin Christian School. Indeed, Kodrich admitted that she knew "[v]ery little" about Aaron's disabilities, Kodrich Dep. at 50, reprinted in J.A. at 435, and she expressed no knowledge of the opportunities offered by Calvin Christian School.

Viewed in its entirety, the evidence in this case strongly suggests that ISD No. 273's policy is a mere pretext for religious discrimination. Cf. Lukumi, 508 U.S. at 534 ("The Free Exercise Clause protects against governmental hostility which is masked as well as overt."). We must therefore reject the district court's conclusion that "there is no evidence in the record that [ISD No. 273] treated children differently on the basis of whether they attended nonpublic nonreligious schools or nonpublic religious schools, notwithstanding the language of Rule 3525.1150." Order (Aug. 12, 1997) at 6, reprinted in Appellants' Addendum at 55. Because "[s]ummary judgment is notoriously inappropriate for determination of claims in which issues of intent, good faith and other subjective feelings play dominant roles," Pfizer, Inc. v. Rectifier Corp. (In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions), 538 F.2d 180, 185 (8th Cir. 1976), we may not grant summary judgment to the Westendorps on this claim, despite the strength of the evidence suggesting that Aaron has been the victim of invidious discrimination. Accordingly, we remand this matter to the district court for a factual determination of whether ISD No. 273 based its denial of services to Aaron at Calvin Christian School on its purported religion-neutral policy, or if its denial was based on the religious animus contained in Minnesota Rule 3525.1150.[1]

## III.

[1] Although the record reveals an obvious dispute regarding ISD No. 273's motivation for denying Aaron a paraprofessional at Calvin Christian School, the parties stipulated, without providing any recitation of facts, "that the material facts of this case are not in dispute, and that the record before the Court" is complete. Stipulation (Aug. 29, 1997) at 3, reprinted in J.A. at 630. While "stipulations of fact fairly entered into are controlling and conclusive," Sims v. Wyrick, 743 F.2d 607, 610 (8th Cir. 1984), a stipulation that is devoid of facts provides little direction for this Court. Because there exists in this case a disputed question of material fact that is not answered by the parties' stipulation, summary judgment was improperly granted.

The Westendorps also appeal the district court's grant of summary judgment on their claim under IDEA. IDEA is designed to encourage states to develop special education programs for disabled students. In return for federal funding, IDEA requires participating states to have "in effect a policy that assures all children with disabilities the right to a free appropriate public education." 20 U.S.C. § 1412(1) (1994). While the parties agree that Aaron has a disability and that he is entitled under IDEA to the services of a paraprofessional paid by ISD No. 273, they disagree on whether IDEA entitles him to those services at Calvin Christian School.

On June 4, 1997, three months after the district court granted summary judgment against the Westendorps on their IDEA claim, comprehensive amendments to IDEA became law. See Individuals with Disabilities Education Act Amendments of 1997, Pub. L. No. 105-17, 111 Stat. 37 (1997). In amending IDEA, Congress substantially limited the rights of disabled children enrolled by their parents in a private school. See 20 U.S.C.A. § 1412(a)(10)(C)(i) (West Supp. 1998) (IDEA will "not require a local educational agency to pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if that agency made a free appropriate public education available to the child and the parents elected to place the child in such private school or facility"). In Foley v. Special School District of St. Louis County, No. 97-2419 (8th Cir. Aug. 14, 1998), this Court held that "[t]he 1997 Amendments expressly provide that public school agencies are not required to pay the costs of special education services for a particular child," and that disabled children and their "parents now have no individual right under IDEA to [specific] special education and related services . . ., so they have no right to a federal court decree mandating that those services be provided at a particular location." Id. (slip op. at 4-5). Accordingly, Aaron has no right under the 1997 Amendments to receive ISD No. 273-funded services at Calvin Christian School.

We must address, however, whether ISD No. 273 engaged in violations of IDEA as it existed prior to its amendment in 1997. Because "the views of a subsequent

Congress form a hazardous basis for inferring the intent of an earlier one," South Dakota v. Yankton Sioux Tribe, 118 S. Ct. 789, 803 (1998) (quotations omitted), we reject ISD No. 273's argument that our interpretation of the pre-amendment version of IDEA is controlled by the 1997 amendments. See Fowler v. Unified Sch. Dist. No. 259, 128 F.3d 1431, 1436 (10th Cir. 1997) (1997 amendments to IDEA are to be applied "only to events occurring after [their] effective date").

IDEA had the "goal of providing a free appropriate public education for all children with disabilities." 20 U.S.C. § 1413(a)(2) (1994). "The word 'public' is a term of art which refers to 'public expense,' whether at public or private schools." Dreher v. Amphitheater Unified Sch. Dist., 22 F.3d 228, 233 n.10 (9th Cir. 1994). States receiving grants under IDEA had to "provide that all children residing within the jurisdiction of the local educational agency or the intermediate educational unit who are disabled, regardless of the severity of their disability, and are in need of special education and related services will be identified, located, and evaluated," 20 U.S.C. § 1414(a)(1)(A) (1994), and had to "establish a goal of providing full educational opportunities to all children with disabilities." 20 U.S.C. § 1414(a)(1)(C) (1994).

The pre-amendment version of IDEA required participating states to provide special education services to private school students. Disabled students enrolled by the state in private schools were entitled to publicly-funded special education services "at no cost to their parents or guardian," 20 U.S.C. § 1413(a)(4)(B) (1994), while disabled students enrolled in private schools by their parents were also entitled to participate in publicly-funded special education programs "to the extent consistent with the number and location of children with disabilities in the State who are enrolled in private elementary and secondary schools." 20 U.S.C. § 1413(a)(4)(A) (1994).

In implementing IDEA, the Department of Education promulgated regulations requiring school districts to "provide special education and related services designed to meet the needs of private school children with disabilities residing in" their

jurisdictions. 34 C.F.R. § 300.452 (1996). In meeting the needs of disabled students enrolled by their parents in private schools, school districts were required to provide services that were "comparable in quality, scope, and opportunity for participation to the program benefits that the subgrantee provides for students enrolled in public schools." 34 C.F.R. § 76.654(a) (1996). Consistent with IDEA, the availability of these services was nevertheless limited by the "number and location" of disabled children in the state. 34 C.F.R. § 300.451(a) (1996); see also 34 C.F.R. § 76.651(a)(2) (1996) (school districts "shall provide that opportunity to participate in a manner that is consistent with the number of eligible private school students and their needs"). While some services could be provided to private school students at public schools, school districts were also allowed to provide special education services to students at private schools. See 34 C.F.R. § 76.659(a), (b) (1996).

Several courts have considered whether the pre-amendment version of IDEA entitled a disabled student enrolled by his parents in a private school to publicly-funded services at the private school. In Fowler v. Unified School District No. 259, 107 F.3d 797 (10th Cir.), vacated and remanded for reconsideration in light of 1997 Amendments to IDEA, 117 S. Ct. 2503, and on remand, 128 F.3d 1431 (10th Cir. 1997) (reaffirming prior decision), the Tenth Circuit held "that the IDEA and its regulations create no automatic right to any and all special education services at a private school site for all students voluntarily attending such a school." Id. at 805. However, the court went on to "reject the proposition that the District has unfettered discretion to simply deny [services to a disabled student at a private school], and claim to have fulfilled its obligations under the IDEA by offering those services to [the student] at a public school." Id. at 806. The court explained:

> [W]e are faced here with the question of whether an individual disabled child, who requires an individualized service which only benefits him if it is provided to him on-site, throughout his educational day, is entitled to that individualized service at the private school he has chosen to attend.

-13-

We conclude that, in such a situation, the District must pay for that service an amount up to, but not more than, the average cost to the District to provide that same service to [similarly-disabled] students in the public school setting.

Id. at 807-08.  On remand from the Supreme Court, the Tenth Circuit held that the 1997 amendments to IDEA did not affect a disabled student's rights under the pre-amendment version of IDEA, and reinstated its earlier analysis.  See Fowler, 128 F.3d at 1436.

In Russman ex rel. Russman v. Sobol, 85 F.3d 1050, 1056 (2d Cir. 1996), vacated and remanded for reconsideration in light of 1997 Amendments to IDEA sub nom. Board of Educ. of the Enlarged City Sch. Dist. v. Russman ex rel. Russman, 117 S. Ct. 2502 (1997), and on remand sub nom. Russman v. Mills, No. 95-7756, 1998 WL 417452 (2d Cir. July 24, 1998), the Second Circuit held that pre-amendment IDEA and its implementing regulations

are more consistent with mandatory entitlements than with discretionary authority.  Where the cost of special services does not vary with where they are provided, the IDEA and regulations regarding voluntary private school students make little sense if such services may be made available only in the public schools.  The statute and regulations require that necessary services be provided to disabled private school students according to their needs rather than the name of their school, and state that such services must be "comparable in quality, scope, and opportunity for participation" to those offered to public school students.  34 C.F.R. § 76.654.  Use of the word "comparable" strongly suggests that the provision of services will usually take place outside the public school.  Otherwise, the regulation would simply provide that any services for the disabled available at a public school must be open to private school students.

Id. at 1056-57 (citation omitted).  On remand, however, the court held that "IDEA as amended does not require a school district to provide on-site special-education services to a disabled child voluntarily enrolled in private school."  Russman, 1998 WL 417452, at *1.

Other courts, however, held that pre-amendment IDEA did not require a school district to provide services to parentally-enrolled disabled students at private schools. See K.R. ex rel. M.R. v. Anderson Community Sch. Corp., 81 F.3d 673, 678 (7th Cir. 1996), vacated and remanded for reconsideration in light of 1997 Amendments to IDEA, 117 S. Ct. 2502, and on remand, 125 F.3d 1017 (7th Cir. 1997) (reaffirming prior decision), cert. denied, 118 S. Ct. 1360 (1998); Cefalu ex rel. Cefalu v. East Baton Rouge Parish Sch. Bd., 117 F.3d 231, 233 (5th Cir. 1997) (reconsidering prior opinion in light of 1997 amendments to IDEA, and holding that school district was not required to provide services to a disabled student at a private school).

We are persuaded that "Congress clearly intended that disabled students voluntarily placed in a private school by their parents [were] to be active participants in and beneficiaries of programs established under the IDEA."  Fowler, 107 F.3d at 805 (quotations omitted).  IDEA was clear that, "consistent with the number and location of" disabled students enrolled by their parents in private schools, students like Aaron had a right to publicly-funded special education services.  See 20 U.S.C. § 1413(a)(4)(A).  While Aaron's rights may not have been identical to those of a disabled child enrolled in a private school by the state, see Fowler, 107 F.3d at 805, he was nevertheless entitled to special education services that were "comparable in quality, scope, and opportunity for participation" to those services provided to public school students.  34 C.F.R. § 76.654(a).[2]

---

[2]ISD No. 273 has relied on interpretive letters issued by the Department of Education which contend that "[t]hese regulations do not confer on every parentally-placed child with a disability an individual entitlement to services."  Letter to Burch,

Under the plain language of IDEA and its implementing regulations, Aaron was entitled to receive services as a private school student. Because of the nature of his disability, Aaron required one-on-one assistance from a paraprofessional throughout his school day. Accordingly, off-site assistance could not meet his special education needs if Aaron were to remain a private school student. While school districts "can and must have considerable discretion in determining how best to serve disabled students," Fowler, 107 F.3d at 807, there is nothing in this record to suggest that ISD No. 273 ever considered how "best" to serve Aaron. Rather, it simply denied him services at Calvin Christian School because it is a private religious school. Here, there is no evidence that ISD No. 273 denied services at Calvin Christian School because "economies of scale, or geographical considerations, [made] it economically infeasible to provide certain services at private school locations." Id. at 807 n.11. Rather, ISD No. 273 would have denied services to any disabled student at a private religious school, regardless of the circumstances of the individual case.

ISD No. 273's denial of all services to Aaron at Calvin Christian School was not "comparable" to offering direct services to students at a public school; rather, comparable services would have included the services of a paraprofessional. See

---

23 Individuals with Disabilities Educ. L. Rep. 560, 562 (1995); see also Letter to McConnell, 22 Individuals with Disabilities Educ. L. Rep. 369, 369 (1994) ("parentally-placed children with disabilities do not have an individual entitlement to services"). Because the regulations implementing IDEA were clear that parentally-enrolled private school students with disabilities were entitled to "comparable" services, 34 C.F.R. § 76.654(a), we must reject the Department of Education's suggestion that no such entitlement exists. See Shalala v. St. Paul-Ramsey Med. Ctr., 50 F.3d 522, 529 (8th Cir. 1995) (although we accept agency interpretations of ambiguous regulations unless they are clearly erroneous, "we are not at liberty to allow the agency to imply language that does not exist in the regulation" (quotations omitted)); see also Newton v. Chater, 92 F.3d 688, 693 (8th Cir. 1996) ("While courts must give deference to an agency's interpretation of its own regulations, courts are not bound by them and they are not conclusive.").

Russman, 85 F.3d at 1056 ("Where the cost of special services does not vary with where they are provided, the IDEA and regulations regarding voluntary private school students make little sense if such services may be made available only in the public schools."). ISD No. 273 did not "provide special education and related services designed to meet the needs of private school children with disabilities residing in [its] jurisdiction," 34 C.F.R. § 300.452, but instead only agreed to meet Aaron's needs once he became a public school student. This action is not supported by IDEA or its implementing regulations, and it violated Aaron's rights under IDEA.

Because we hold that ISD No. 273 violated Aaron's rights under IDEA by denying him a paraprofessional at Calvin Christian School, we must remand to the district court for a determination of the proper scope of relief. The parties have stipulated to nominal damages of one dollar. See Stipulation (Aug. 29, 1997) at 2, reprinted in J.A. at 629. While the Westendorps continue to seek injunctive relief for this violation, "[t]he remedy of an injunction is preventive and looks only to the future[, and] can not be invoked for the purpose of punishment for wrongful acts already committed." Minneapolis & St. Louis Ry. Co. v. Pacific Gamble Robinson Co., 181 F.2d 812, 814 (8th Cir. 1950). However, the Westendorps have cited to authority which suggests that, under IDEA, equitable relief for past injuries may nevertheless be proper. See Florence County Sch. Dist. Four v. Carter ex rel. Carter, 510 U.S. 7, 15-16 (1993) (citing 20 U.S.C. § 1415(e)(2)). We leave the question of a proper remedy in this case to the "broad discretion" of the district court. Id. (quotations omitted).

## IV.

Finally, the Westendorps argue that, even if ISD No. 273's actions were not motivated by religious animus, its refusal of a paraprofessional to Aaron at Calvin Christian School violates the constitution by conditioning the receipt of generally available government services on the Westendorps' foregoing of a constitutional right. It is undisputed that Aaron has the right to receive special education services if he

attends a public school. It is also clear that the Westendorps have the constitutional right to choose the education that Aaron shall receive. See Pierce v. Society of Sisters, 268 U.S. 510, 534-35 (1925) (discussing "the liberty of parents and guardians to direct the upbringing and education of children under their control," which "excludes any general power of the State to standardize its children by forcing them to accept instruction from public teachers only"); see also Wisconsin v. Yoder, 406 U.S. 205, 233-34 (1972). If the Westendorps exercise their right to send Aaron to the school of their choice, however, ISD No. 273 will not provide special education services to Aaron. See Kodrich Dep. at 114, reprinted in J.A. at 499. The Westendorps therefore argue that ISD No. 273 has unconstitutionally conditioned their receipt of a generally available right upon their forbearance of a constitutional right. See, e.g., Thomas v. Review Bd. of the Ind. Employment Sec. Div., 450 U.S. 707, 717-18 (1981) ("Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists. While the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial.").

While "the government may not deny a benefit to a person because he exercises a constitutional right," Regan v. Taxation With Representation of Wash., 461 U.S. 540, 545 (1983), the government's "decision not to subsidize the exercise of a fundamental right does not infringe the right, and thus is not subject to strict scrutiny." Id. at 549. Indeed, the Supreme Court has been extremely hesitant to suggest that private school students have a constitutional entitlement to the same benefits that are given to public school students by the government. See, e.g., Norwood v. Harrison, 413 U.S. 455, 462 (1973) ("In Pierce, the Court affirmed the right of private schools to exist and to operate; it said nothing of any supposed right of private or parochial schools to share with public schools in state largesse, on an equal basis or otherwise. It has never been held that if private schools are not given some share of public funds allocated for education that such schools are isolated into a classification violative of the Equal

Protection Clause. It is one thing to say that a State may not prohibit the maintenance of private schools and quite another to say that such schools must, as a matter of equal protection, receive state aid.").

In light of our remand on other bases, however, we need not reach this issue. See Clinton v. Jones, 117 S. Ct. 1636, 1642 n.11 (1997) ("If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality unless such adjudication is unavoidable." (quotations and alteration omitted)). Accordingly, we leave this matter for another day.

## V.

We reverse the district court's grant of summary judgment to ISD No. 273, and we remand for a factual determination of whether ISD No. 273's denial of services to Aaron Westendorp at Calvin Christian School was motivated by religious animus. In addition, we remand this matter to the district court for a determination of the proper relief to the plaintiffs for the defendant's past violation of IDEA.

ROSS, Circuit Judge, dissenting.

I disagree with the majority that the district court erred in granting summary judgment in favor of ISD No. 273, and thus dissent.

As to the Westendorps' religious discrimination claim, the majority believes that the evidence "strongly suggests" that the school district's "long-standing policy, which it maintains today, of not providing direct, on-site special education and related services at private schools, regardless of their religious or secular orientation" is a "mere pretext for religious discrimination." Maj. Op. at 9. To me, the fact that the school district has provided special education services at a nonreligious private preschool and to a home-

-19-

schooled student does not raise an inference that it has discriminated on the basis of religion in refusing to provide on-site services in the K-12 classroom setting, which is the issue in this case. Moreover, in concluding there is a disputed issue of fact as to pretext, the majority has improperly engaged in fact finding and ignored the parties' stipulation that "the material facts of this case are not in dispute." Indeed, in the course of its opinion, the majority transforms a finding of a disputed fact into a finding of undisputed fact. On page 16, the majority states that ISD No. 273 "simply denied [Aaron] services at Calvin Christian School because it is a private religious school" and "would have denied services to any disabled student at a private religious school." While it is undisputed that the school district denies on-site services to students at private schools, it is not undisputed that services are denied because of the religious nature of the school.

In addition, the majority's characterization of the school district's policy as "a mere ad hoc rationalization of an irrational policy" ignores the evidence. Maj. Op. at 9. Penny Kodrich, the school district's director of special services, stated that the policy was long-standing and was designed to maintain control over the quality of the district's programs and personnel, foster integrated teamwork and communication between special education and regular staff, and maximize benefits to students based on limited financial resources. Kodrich further stated that if the school district had to provide on-site services at private schools these goals would be frustrated. For example, regarding quality concerns, Kodrich explained that the special services staff work as part of an integrated team with the general education staff and if services were provided at private schools, the school district would have no control over the selection, training, and coordination of private staff members.

Regarding cost considerations, Kodrich explained that the school district "constantly endeavors to provide the maximum educational benefit to a large population of disabled students based on a very limited set of resources." J.A. at 152. She further explained that "[b]y pooling direct special education resources in public school sites

the School District can realize economic efficiencies by sharing and integrating resources." Id. In particular, she noted that the services of a paraprofessional "can and are frequently shared by more than one student" and that "[i]f the school district was required to send individual paraprofessionals out to remote sites, the savings realized by these efficiencies would be lost." Id. In addition, Wayne Erickson, manager of the state division of special education, stated that, based on his financial analysis, provision of on-site services to disabled private school students would result in additional expenditures of at least $10,814,027.00 for school districts and $5,882,830.00 for the state. Id. at 144. He also stated that it was impossible to estimate additional costs if school districts provided on-site services at private schools since special education students enrolled in public schools might then choose private schools. Id. at 145. Thus, the majority incorrectly states that "there is no evidence that ISD No. 273 denied services at Calvin Christian School because economies of scale, or geographical considerations, [made] it economically infeasible to provide certain services at private school locations." Maj. Op. at 16 (internal quotation omitted).

Moreover, and importantly, the majority ignores the Supreme Court's admonition that "courts are not to 'substitute their own notion of sound educational policy for those of the school authorities which they review.' " Fort Zumwalt Sch. Dist. v. Clynes, 119 F.3d 607, 610 (8th Cir. 1997) (quoting Board of Educ. v. Rowley, 458 U.S.176, 206 (1982), cert. denied, 118 S. Ct. 1840 (1998)). This is so because "[c]ourts 'lack the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy[.]' " Id. at 613 (quoting Rowley, 458 U.S. at 208). Especially difficult questions facing school districts concern "implement[ing] the policy of educating all disabled students" in light of limited financial resources, and "the sufficiency of that education must be evaluated in light of the available resources." Id. at 612.

I also disagree with the majority's holding that ISD No. 273's conduct violated the IDEA before it was amended in 1997. The pre-amended statute provided that

disabled students who were placed in private schools by the state or school district were entitled to "special education and related services . . . at no cost to their parents or guardian." 20 U.S.C. § 1413(a)(4)(B)(i) (1994). In contrast, disabled students who were unilaterally placed in private schools by their parents were only entitled to participate in special education programs and services "to the extent consistent with the number and location of" disabled students within the state. Id. at § 1413(a)(4)(A) (1994).

In 1997 Congress amended the statute to make clear that the IDEA "does not require a local educational agency to pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if that agency made a free appropriate public education available to the child and the parents elected to place the child in such private school or facility." 20 U.S.C.A. §1412(a)(10)(C)(i) (West Supp. 1998). As the majority concedes, "Aaron has no right under the 1997 Amendments to receive ISD No. 273-funded services at Calvin Christian School." Maj. Op. at 11 (citing Foley v. Special Sch. Dist. of St. Louis County, No. 97-2419, 1998 WL 473146, at *2 (8th Cir. Aug. 14, 1998) ("1997 Amendments expressly provide that public school agencies are not required to pay the cost of special education services for a particular child")).

In enacting the 1997 Amendments, Congress merely "clarif[ied] the responsibility of public school districts to children with disabilities who are placed by their parents in private schools." S. Rep. No. 17, 105th Cong. 1st. Sess. 13 (1997). Thus, I believe the amended IDEA applies to all of the Westendorps' IDEA claims and precludes relief. See K.R. ex rel. M.R. v. Anderson Community Sch. Corp., 81 F.3d 673 (7th Cir. 1996), vacated and remanded for reconsideration in light of 1997 Amendments to IDEA,117 S. Ct. 2502, and on remand, 125 F.3d 1017, 1019 (7th Cir. 1997) (1997 Amendments were "legislative clarification"), cert. denied, 118 S. Ct. 1360 (1998); Donald B. v. Board of Sch. Comm'r, 117 F.3d 1371, 1373 n.2 (11th Cir.

1997) (1997 Amendments "do not alter substantively" § 1413(a)(4)); <u>Cefalu ex rel. Cefalu v. East Baton Rouge Parish Sch. Bd.</u>, 117 F.3d 231, 232 (5th Cir. 1997) (same).

Even if the 1997 Amendments are not controlling, I do not believe that the pre-amended IDEA required that a school district provide on-site services to a disabled student who was unilaterally placed at a private school. "The goal of IDEA is to provide access to public education for all handicapped students." <u>Fort Zumwalt Sch. Dist.</u>, 119 F.3d at 612. "IDEA does not require that a school either maximize a student's potential or provide the best possible education at public expense." <u>Id.</u> "The statute only requires that a public school provide sufficient specialized services so that the student benefits from his education." <u>Id.</u> Moreover, this court has held that the pre-amended IDEA and "regulations promulgated thereunder g[a]ve the school district discretion in selecting the location where it w[ould] educate a handicapped child." <u>Schuldt v. Mankato Ind. Sch. Dist. No. 77</u>, 937 F.2d 1357, 1361 (8th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1059 (1992). It is undisputed that ISD No. 273 provides Aaron a paraprofessional at a public school, and his parents have not questioned the quality of the services that Aaron receives.

The majority is persuaded by the Tenth Circuit's analysis in <u>Fowler v. Unified Sch. Dist. No. 259</u>, 107 F.3d 797, <u>vacated and remanded for reconsideration in light of 1997 Amendments to IDEA</u>, 117 S. Ct. 2503, <u>and on remand</u>, 128 F.3d 1431 (10th Cir. 1997). In <u>Fowler</u>, the Tenth Circuit "recognized that the IDEA and its regulations afford considerable discretion to [school districts] to determine the manner and extent of services to be provided" to disabled students in private schools. 107 F.3d at 806. Although the court did not believe that the school district was obligated to provide on-site services of a full-time interpreter at a private school, <u>id</u>, it held that a school district had to "pay for that service an amount up to, but not more than, the average cost to the District to provide that same service to hearing-impaired students in the public school setting." <u>Id.</u> at 807-08. However, the court acknowledged that its holding appeared to conflict with IDEA regulations, <u>id.</u> at 808 n.12, the interpretation of the Department

of Education (DOE), id. at 804-05, and the Seventh Circuit's decision in Anderson, id. at 806.

Unlike the majority and the Tenth Circuit, I agree with the Seventh Circuit that "[w]here the public school makes available the necessary service at a public institution, giving the disabled student a genuine opportunity to participate, and nothing in the record indicates that it has otherwise abused its discretion, the public school has discharged its obligation" under the pre-amended IDEA. Anderson , 81 F.3d at 680; see also Goodall v. Stafford County Sch. Bd., 930 F.2d 363, 369 (4th Cir.) (school district fulfilled its statutory obligation by offering disabled student services of speech interpreter at public school), cert. denied, 502 U.S. 864 (1991).

In this case, the majority relies on 34 C.F.R. § 76.654(a) (1996), which required that the benefits a school district provided for private school students be "comparable in quality, scope, and opportunity for participation to" the benefits provided for public school students. However, as explained in Anderson, the regulation was "not by its terms a mandate that private school students shall receive full benefits." 81 F.3d at 679. Rather, "read in light of the statutory scheme . . . and the other regulations, . . . the only reasonable interpretation of Section 76.654(a) is that the comparability requirement [wa]s limited to the program benefits that [a district] provide[d]." Anderson, 81 F.3d at 679 (internal quotation omitted). In other words, because public school districts had "discretion over what benefits to provide[,]" the regulation only required that "when benefits [we]re provided . . . that they [would] be comparable to benefits for public school students." Id.

Thus, the majority's "determination that a full-time instructional assistant was the only 'comparable' alternative . . . fail[s] to take into account the discretion afforded public schools in deciding which services to provide." Id. Moreover, and, "not insignificantly," the majority's determination conflicts with the DOE's interpretation of the regulations. Id. at 678. As the majority notes, the DOE's position was that the

"regulations d[id] not confer on every parentally-placed child with a disability an individual entitlement to services."  Maj. Op. at 15 n.2 (internal quotation omitted). Because the DOE's interpretation was not plainly erroneous or inconsistent with the regulations, "it must be given controlling weight."  Board of Regents v. Shalala, 53 F.3d 940, 943 (8th Cir. 1995).

In sum, I believe that in providing the services of a paraprofessional to Aaron "at a public site and declining to provide an instructional assistant to a single student in the private school, it is evident that [ISD No. 273] fairly exercised its discretion to consider the number of eligible private school students and their needs in deciding what benefits w[ould] be provided."  Anderson, 81 F.3d at 680.  Because "there is no evidence here that [ISD No. 273] eschewed its responsibility under the IDEA," id., and because I believe that the district court properly rejected the Westendorps' other claims, I would affirm the grant of summary judgment in favor of ISD No. 273.  I thus dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-25-