# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-3984

_____

John T.; Leigh T., Individually and as    *
Guardians and Next Friends of Robert T.,*
       *
       Appellees,        *
       *
       v.        *
       *
Marion Independent School District;    *
Grant Wood Area Education Agency,    *
       *
       Appellants.        *


_____

No. 98-1185

_____

John T.; Leigh T., Individually and as    *
Guardians and Next Friends of Robert T.,*
       *
       Appellees,        *
       *
       v.        *
Marion Independent School District;    *
Grant Wood Area Education Agency;    *
The Iowa Department of Education,    *
       *
       Appellants.        *

Appeals from the United States
District Court for the
Northern District of Iowa.

_____

Submitted:  December 16, 1998
Filed:  April 19, 1999

_____

Before MURPHY, JOHN R. GIBSON, and MAGILL, Circuit Judges.

_____

MAGILL, Circuit Judge.

Robert T. is a disabled child who requires a full-time, student-specific assistant in order to function in a classroom environment.  Robert's parents voluntarily enrolled him in St. Joseph Catholic School (St. Joseph), a private religious school in Marion, Iowa.  Robert's parents requested, but were refused, a full-time assistant for Robert while he was enrolled at St. Joseph.  They were told that an assistant would be provided for Robert only if he attended public school.  Robert's parents brought this suit against the Marion Independent School District (MISD), the Grant Wood Area Education Association (GWAEA), and the Iowa Department of Education (IDOE) (collectively, the School District), seeking damages and equitable relief, alleging that the failure to provide Robert a full-time assistant violates both Iowa law and the Individuals with Disabilities Education Act (IDEA).  The district court, after hearing the case on stipulated facts, found that the School District's refusal to provide an assistant to Robert at St. Joseph violated Iowa law.  Because it awarded full relief to Robert's parents on state law grounds, the district court did not consider their IDEA claims.  The district court also awarded Robert's parents attorneys' fees because it found they were prevailing parties within the meaning of the IDEA.  We affirm in part, and reverse and remand in part.

## I.

The parties stipulated to the following facts. Robert is a minor child who suffers from cerebral palsy, which severely affects his physical mobility and communication skills. Robert appears to have normal cognitive abilities and appears to have no emotional or behavioral difficulties. The parties agree that Robert is disabled within the meaning of the IDEA and that he is a child requiring special education as specified by Iowa law. See 20 U.S.C. § 1401(a)(1)(A)(i); Iowa Code § 256B.2. MISD is a local educational agency, as defined by the IDEA, with authority over Robert's education. See 20 U.S.C. § 1401(a)(8). Under Iowa law, MISD is a school district required to provide special educational services to school-age children within its jurisdiction. See Iowa Code §§ 256.12(2), 280.1-.25. Within the terms of the IDEA, GWAEA is a local educational agency with authority over Robert's education. See 20 U.S.C. § 1401(a)(8). Because GWAEA is an area educational agency as defined by Iowa law, it is required to furnish special education to students, like Robert, within its boundaries. See Iowa Code § 256.12(2), 273.1-.13. IDOE is a state educational agency with authority over Robert's education within the meaning of the IDEA. See 20 U.S.C. § 1401(a)(7).

Pursuant to both state and federal law, Robert's parents in conjunction with MISD and GWAEA developed an Individualized Education Program (IEP) for Robert. This IEP concluded that Robert needs the aid of a full-time, student-specific assistant to meet the demands of his school routine.[1] The School District was

---

[1] It should be noted that the School District's responsibility under the IDEA to provide the services at issue here–those of a full-time communications assistant–is not abrogated by that statute's medical services exception. See Cedar Rapids Community Sch. Dist. v. Garrett F., No. 96-1793, — U.S. —, 1999 WL 104410, at *4 (U.S. Mar. 3, 1999) (noting medical services exception limited to those services that must be performed by a physician). In Garrett F., the Supreme Court held that continuous services, like the full-time assistant Robert needs, are not transformed into

prepared to provide Robert with the necessary services in a public school setting but refused to provide a full-time assistant to Robert on private school property. Robert's parents chose to provide Robert with the necessary assistant at their own expense.

The district court concluded that the School District violated Iowa law when it refused to provide Robert with a full-time, student-specific assistant at St. Joseph. It ordered the School District to provide the assistant for Robert and awarded Robert's parents damages to reimburse them for the costs they had sustained in providing Robert with the assistant. Because it determined that Robert's parents' success on the Iowa claim rendered them prevailing parties under the IDEA, the district court also awarded attorneys' fees to Robert's parents.

## II.

This Court reviews de novo questions of state law decided by the district court. See Kovarik v. American Family Ins. Group, 108 F.3d 962, 964 (8th Cir. 1997). Because the Iowa courts have yet to consider the question before us regarding interpretation of Iowa Code § 256.12(2), our objective is to predict how Iowa's highest state court would interpret the statute. See id. at 964; Brandenburg v. Allstate Ins. Co., 23 F.3d 1438, 1440 (8th Cir. 1994).

The School District first argues that the district court erred in finding that the School District violated Iowa law by refusing to provide Robert with a full-time assistant at St. Joseph. In the School District's opinion, Iowa law vests in it absolute discretion to determine whether to provide special education services on nonpublic school grounds. The relevant provision of the Iowa Code provides:

---

medical services simply because they are more costly and may require additional personnel. Id. at *5.

School districts and area education agency boards <u>shall</u> make public school services, which shall include special education programs and services and may include health services, services for remedial education programs, guidance services, and school testing services, available to children attending nonpublic schools in the same manner and to the same extent that they are provided to public school students. However, services that are made available shall be provided on neutral sites, or in mobile units located off the nonpublic school premises as determined by the boards of the school districts and area education agencies providing the services, and not on nonpublic school property, except for health services, diagnostic services for speech, hearing and psychological purposes, and assistance with physical and communication needs of students with physical disabilities, and services of an educational interpreter, which <u>may</u> be provided on nonpublic school premises, with the permission of the lawful custodian.

Iowa Code § 256.12(2) (emphases added). Specifically, the School District hangs its hat on the word "may," which it believes vests in the School District unfettered discretion to provide or not to provide special education services on nonpublic school premises. While "may" is generally understood by Iowa courts to imply permissive or discretionary action, <u>see</u> <u>Lenning v. Iowa Dept. of Trans.</u>, 368 N.W.2d 98, 101 (Iowa 1985), ascribing such a meaning to "may" in § 256.12(2) would eviscerate the section's overarching mandate. <u>See</u> Iowa Code § 4.1 (noting words should be given their common meaning unless "repugnant to the context of the statute"). The reading the School District urges us to accept is at odds with the Iowa courts' practice of looking "at the whole statute and not the separate parts," <u>see</u> <u>United Fire & Cas. Co.</u> <u>v. Acker</u>, 541 N.W.2d 517, 519 (Iowa 1995), because it allows the purportedly discretionary exception to trump the mandatory rule.

The School District's reading must be rejected because it would render nugatory § 256.12(2)'s requirement that school districts "shall make public school services. . . available to children <u>attending</u> nonpublic schools <u>in the same manner and</u> <u>to the same extent</u> that they are provided to public school students." Iowa Code §

256.12(2) (emphases added). It would be nonsensical for the Iowa legislature to require school districts to provide services to a student "attending" nonpublic schools and, in its next breath, to allow school districts to refuse such services solely on the basis of such attendance. The statute clearly mandates provision of these services to students who attend nonpublic schools. Were we to accept the School District's reading, Robert would not receive public school services in the same manner or to the same extent that they are provided to public school students. In fact, he would not receive them at all. The School District cannot, consistent with the plain text of § 256.12(2), be allowed to condition receipt of the services on a student's ceasing to attend nonpublic schools because doing so would render that section's requirements impotent.

Reading "may" as vesting absolute discretion in the School District to determine whether to provide services on nonpublic school property would also be improper because it would generate an internal inconsistency. The School District's reading would create a direct conflict between the first and second sentences of § 256.12(2) because the former would impose a mandate while the latter would explicitly allow school districts to ignore the mandate. The Iowa Supreme Court rejects interpretations that create internal inconsistencies. See Farmers Coop. Co. v. DeCoster, 528 N.W.2d 536, 538 (Iowa 1995) (noting Iowa courts "presume a legislature does not deliberately enact inconsistent provisions when it is cognizant of them both"). In seeking to interpret § 256.12(2) as would the Iowa Supreme Court, we must reject the School District's reading as unacceptably discrepant.

Iowa courts have endorsed the position that "may" in certain circumstances should not be construed as vesting discretion where such an interpretation generates illogical results. Specifically, Iowa courts are reluctant to interpret "may" as conferring discretion where, as here, the rights of the public depend on the exercise of the performance of the duty to which it refers. See Vale v. Messenger, 168 N.W. 281, 283 (Iowa 1918). It certainly would be illogical to provide nonpublic school

students with the right to equal public school services and also to provide school districts with the power to withhold these services. Our conclusion that "may" does not provide the School District with absolute discretion in discharging its duty to provide necessary services is dictated by common sense and the context of § 256.12(2). See Schultz v. Board of Adjustment, 139 N.W.2d 448, 451-52 (Iowa 1966) (noting that logic and context guide interpretation of "may" in statute); Iowa Code § 4.1.[2]

The School District violated Iowa Code § 256.12(2) when it refused a full-time, student-specific assistant to Robert. We therefore affirm the district court with respect to Robert's parents' state law claim.[3]

## III.

The School District argues that the district court also erred in concluding that Robert was a prevailing party under the IDEA and awarding him attorneys' fees, because Robert prevailed only on the state law claim, and Iowa law does not provide for an award of attorneys' fees. We agree. In Warner v. Independent Sch. Dist. No.

---

[2]We believe the use of "may" in the second sentence of § 256.12(2), rather than vesting absolute discretion in the School Board, expresses the legislature's desire to condition the provision of special education services like communications assistance on nonpublic school grounds on "the permission of the lawful custodian." Iowa Code § 256.12(2). Our reading of the statute gives meaning and effect to all terms and preserves internal consistency.

[3]Because we agree with the district court's conclusion regarding Robert's parents' state law claim, we do not disturb the court's order requiring the School District to provide Robert with the assistant as long as his IEP requires such an assistant. Regardless of the fact that Robert's parents do not prevail on the post-1997 element of their IDEA claim, see Part IV, infra, they are still entitled to appropriate remedies for the School District's violation of Iowa law.

<u>625</u>, 134 F.3d 1333 (8th Cir. 1998), this Court analogized the IDEA attorneys' fees provisions to similar provisions of 42 U.S.C. § 1988. 134 F.3d at 1337. We noted that other circuits "'have uniformly held that a plaintiff who loses on the merits of its federal civil rights claim is not a "prevailing party" for purposes of an award of attorneys' fees under 42 U.S.C. § 1988, even if it prevails on a related pendent state law claim.'" <u>Id.</u> (quoting <u>National Org. for Women v. Operation Rescue</u>, 37 F.3d 646, 653-54 (D.C. Cir. 1994)).

In the instant case, the district court chose not to consider Robert's parents' IDEA claim because it awarded them full relief based on Iowa law. However, it could not award attorneys' fees under the IDEA solely on the basis of Robert's parents' success on their state law claim because Robert's parents were not prevailing parties under the IDEA and Iowa law does not authorize such an award. Given our admonition in <u>Warner</u>, it is evident that Robert's parents would not be entitled to attorneys' fees under the IDEA if they lost on the merits of their IDEA claim and succeeded on the merits of their state law claim. It follows, then, that the district court could not properly award attorneys' fees under the IDEA in the absence of an explicit finding that Robert's parents were entitled to relief under the IDEA. As it stands, there exists the possibility that Robert's parents would not have prevailed on their IDEA claim had the district court considered it. We cannot affirm an award of attorneys' fees under IDEA as long as such a possibility exists.

We make clear today what we implied in <u>Warner</u>: a party is not entitled to attorneys' fees under the IDEA unless he prevails on his IDEA claim and irrespective of his success or failure on the merits of any related state law claim. Because there is no legal foundation under Iowa law or the IDEA for the award in this case, the district court erred in awarding attorneys' fees to Robert's parents.

**IV.**

In light of our decision regarding attorneys' fees under the IDEA, we think it best to remand this case with instructions to the district court on Robert's parents' IDEA claim. This Court's recent decisions lead us to conclude that the School District's actions before 1997 violated the IDEA but that its actions after that time did not violate the IDEA.

We begin with a brief review of the history of the IDEA. IDEA has the "goal of providing a free appropriate public education for all children with disabilities." 20 U.S.C. § 1413(a)(2) (1994). In implementing the IDEA, the Department of Education promulgated regulations requiring school districts to "provide special education and related services designed to meet the needs of private school children with disabilities" residing in their jurisdictions. 34 C.F.R. § 300.452 (1996). In meeting the needs of these children, school districts were required to provide them services that were "comparable in quality, scope, and opportunity for participation to the program benefits" provided to students enrolled in public schools. 34 C.F.R. § 76.654(a) (1996).

In June 1997 a number of amendments to the IDEA became law. See Individuals with Disabilities Education Act Amendments of 1997, Pub. L. No. 105-17, 111 Stat. 37 (1997). These amendments substantially limit the rights of disabled children enrolled by their parents in a private school. See 20 U.S.C. § 1412(a)(10)(C)(i) (noting local educational agency is not required to pay for cost of special education services of child with disability at private school if that agency made a free appropriate public education available to the child and the parents chose to place the child in that private school).

In Peter v. Wedl, 155 F.3d 992 (8th Cir. 1998), we considered an IDEA claim essentially similar to the one at hand. As an initial matter, this Court held that interpretation of the pre-amendment version of the IDEA (pre-1997 IDEA) is not controlled by the 1997 amendments. See id. at 998; see also Fowler v. Unified Sch.

Dist. No. 259, 128 F.3d 1431, 1436 (10th Cir. 1997) (holding 1997 amendments to the IDEA are to be applied only to events occurring after their effective date). We also noted that "Congress clearly intended [under pre-1997 IDEA] that disabled students voluntarily placed in a private school by their parents were to be active participants in and beneficiaries of programs established under the IDEA." Peter, 155 F.3d at 1000 (quotations and alterations omitted). In Peter we concluded that where a school district denies a student special education services simply because he is enrolled in a private religious school, that school district violates the mandates of the pre-1997 IDEA. Id. at 1001.

Peter is on all fours with the case at hand. In reviewing the stipulated facts on which this case was submitted to the district court, it is evident that Robert's attendance at St. Joseph was the only reason for the School District's refusal to provide special education services. Two factors were cited by the School Board for its decision not to provide a full-time assistant to Robert while he was enrolled at St. Joseph. First, the School Board noted that it would not be able to count Robert for purposes of receiving state educational aid. Second, the School Board was afraid it would establish a precedent of allowing the provision of special education services at nonpublic schools if it granted Robert's request. The School Board acknowledged that, to the date of its hearing on Robert's request, it had not provided any special education services on nonpublic school property. As in Peter, the School District here "would have denied services to any disabled student at a private religious school, regardless of the circumstances of the individual case," id. at 1001, and, in making its decision, the School Board never "considered how 'best' to serve [Robert]." Id. In denying Robert a full-time assistant, the School District did not provide him with services "comparable in quality, scope, and opportunity" to those provided to public school students. See id.; see also 34 C.F.R. § 76.654(a). Thus, the School District violated the provisions of the pre-1997 IDEA.

With regard to the post-1997 portion of Robert's parents' IDEA claim, our

discussion in <u>Peter</u> is also relevant. In that case we noted that under the 1997 amendments to the IDEA (post-1997 IDEA), "parents now have no individual right under IDEA to [specific] special education and related services . . . , so they have no right to a federal court decree mandating that those services be provided at a particular location." <u>Peter</u>, 155 F.3d at 998 (quotations omitted; alterations in original). Therefore, we held that under the post-1997 IDEA the parents had no right to receive school district-funded services at a private religious school. <u>See id.</u> With respect to Robert's parents' post-1997 claim, then, they have no right under the post-1997 IDEA to receive services funded by the School District while Robert is voluntarily enrolled at St. Joseph.

We leave to the "broad discretion of the district court" the question of the remedy to which Robert's parents are entitled as a result of the School District's violations of the pre-1997 IDEA. <u>See</u> <u>id.</u> After making this determination, the district court should reconsider whether and to what extent Robert's parents are entitled to an award of attorneys' fees under the IDEA.[4]

## V.

In summary, we affirm the district court with respect to Robert's parents' state law claim. We reverse the district court's award of attorneys' fees. We remand to the district court with instructions to enter judgment for Robert's parents on the pre-1997 portion of their IDEA claim and judgment for the School District on the post-1997 portion of their IDEA claim. In addition, we remand this matter to the district court for reconsideration of its award of attorneys' fees in light of our decision regarding the IDEA claims.

---

[4]At that time, the district court may consider the arguments between MISD and GWAEA on the one hand and IDOE on the other regarding the proper apportionment of attorneys' fees among the three parties.

-11-

JOHN R. GIBSON, Circuit Judge, concurring and dissenting.

I concur in the result reached in part II of the court's opinion today, but respectfully dissent from part III of the court's opinion today and, because part IV is dependent upon part III, would not reach part IV.

In my view, the court today compounds the worst features of our earlier decision in Warner v. Independent School District No. 625, 134 F.3d 1333 (8th Cir.), cert. denied, 119 S. Ct. 67 (1998). I dissented from Warner because in my view it improperly characterized Warner's relief as grounded exclusively in state law based upon the court's misapprehension of the reach of the Individuals with Disability Education Act, 20 U.S.C. §§ 1400-91o. Warner, however, differed in an important respect from the case now before us. Warner interpreted IDEA's attorneys' fees provision by analogy to 42 U.S.C. § 1988, which does not permit recovery of fees where the plaintiff prevails only on pendent state law claims. Warner acknowledged an exception for cases in which the court grants relief on a pendent claim in order to avoid reaching a federal constitutional claim. 134 F.3d at 1337. Warner held that the exception did not apply in that case because the hearing review officer expressly rejected Warner's IDEA claims before granting relief under state law.

The case before us is quite different. In the complaint, parents and child both alleged that Robert T. was a child with disability within the meaning of the IDEA. They sought relief under the IDEA and the Iowa Code, and prayed for reasonable attorneys' fees in accordance with section 1415 of the IDEA, as well as reimbursement of costs incurred in obtaining the service of the full-time one-on-one classroom assistant for Robert. The state hearing officer rejected both IDEA and state law claims. The district court, however, pointed out that both the Marion Independent School District and Grant Wood Area Education Association were local educational agencies within the meaning of 20 U.S.C. § 1401(a)(8), and area

-12-

education agencies within the meaning of the Iowa statute. It recited that Robert T.'s parents and the agencies prepared an individualized education program calling for a full-time, student-specific classroom assistant to aid with physical and communication needs. In ordering relief, the district court stated, "State law standards that impose a greater duty to educate handicapped children are enforceable under the IDEA, if those standards are not inconsistent with federal law." In a footnote the district court cited numerous federal decisions supporting that proposition. The court concluded that the relevant state law standards were not inconsistent with federal requirements. Accordingly, it ordered a full-time**,** student-specific assistant to aid Robert T. with mobility and communication while he is enrolled at St. Joseph School and awarded costs and attorneys' fees under 20 U.S.C. § 1415. In a later order setting the amount of attorneys' fees, the court set out the language from 20 U.S.C. § 1415(e)(4)(B) (1994) authorizing fees "[i]n any action or proceeding brought under this subsection." The court stated:

> As noted in the court's order of September 30, 1997, state law standards that impose a greater duty to educate handicapped children are enforceable under the IDEA, 20 U.S.C. § 1400 et seq. Plaintiffs brought this action under the IDEA to enforce those standards and prevailed. Defendants have come forward with no authority, nor persuasive reasoning, supporting their contention that plaintiffs are not entitled to fees. (Emphasis added.)

Thus, the court today improperly characterizes the action of the district court when it states: "[T]he district court chose not to consider Robert's parents' IDEA claim because it awarded them full relief based on Iowa law." The court today overlooks the unquestioned legal principle that state law standards that impose a greater duty to educate handicapped children than the IDEA are nevertheless enforceable under the IDEA, if not inconsistent with federal law.

The court's bifurcation of claims brought under Iowa law and those brought

under the IDEA overlooks the interrelationship between the IDEA and the laws of the State of Iowa, as well as those of the other states receiving the federal assistance to state and local efforts to meet the educational needs of disabled children. The aid to states provided by IDEA is conditioned on state compliance with certain procedures and safeguards. 20 U.S.C. § 1412. The provision of funds for the educational needs of disabled children is accomplished by means of a complex and interrelated fabric woven by the IDEA and state statutory provisions. This interrelationship resulted in the passage of the Iowa statutes under which relief was granted.

The court today by its own terms makes clear what it states was implied in Warner, that a party is not entitled to fees under the IDEA unless he prevails on the IDEA claim irrespective of success or failure of the merits of any related state law claim. This takes the case far beyond Warner, and compounds the failure to recognize the closely interrelated fabric created by the IDEA, its supporting regulations, and the provisions of state law.

Further, the analogy to section 1988 is less valid in this case than in Warner. In Warner the IDEA claim had been specifically rejected, but relief was granted under state law. In the case before us, the district court granted the relief, which it accurately characterized as relief under the IDEA, based upon state statutes imposing a greater duty not inconsistent with federal law. The court clearly recognized in its final order granting fees that the complaint was one under the IDEA. The specific statutory grant of authority to award fees in 20 U.S.C. § 1415(e)(4)(B) (1994), now codified at 20 U.S.C.A. § 1415(i)(3)(B) (West Supp. 1998), provides for fees "[i]n any action or proceeding brought under this subsection." The case before us was clearly brought under the subsection, so pleaded and so decided, and the court today errs in its rewriting of the record before us.

I would affirm the judgment of the district court. The court today must stretch Warner beyond its bounds to avoid this result, and I think it errs in doing so.

Congress has clearly provided that fees should be awarded in cases brought under the IDEA; indeed, provision of these educational services for disabled children is in many cases dependent upon the efforts of counsel in obtaining what the law requires, as in this case. To unduly narrow the scope of the statute awarding fees in such cases not only contravenes Congressional intent, but will result in the denial of services to many disabled children who need them.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.