

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-30-1994

# Brown et al. v. Borough of Mahaffrey, et al.

Precedential or Non-Precedential:

Docket 93-3063

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Brown et al. v. Borough of Mahaffrey, et al." (1994). *1994 Decisions.* Paper 148.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/148

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94-3063


ANDREW D. BROWN and ABUNDANT LIFE MINISTRIES,
Appellants

v.

BOROUGH OF MAHAFFEY, PENNSYLVANIA, a municipal corporation,
JOHN M. BAKAYSA, PAUL MAHAFFEY, FRANK ELLING, JOHN BRACKEN,
KIMBERLY STRUBLE, POLLY BELL, KENNETH BEE,
RODGER JOHNSON and FRANCIS P. RUFFLEY,
Appellees


On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 93-40J)


Argued:  July 25, 1994

Before:  BECKER and ALITO, <u>Circuit Judges</u>
and BRODY, <u>District Judge</u>[*]

(Filed:  September 30, 1994)

JOSEPH E. BUCKLEY, JR. (Argued)
100 Main Street
Brookville, PA 15825

<u>Attorney for Appellants</u>

PAMELA G. COCHENOUR (Argued)
ROBERT E. DAPPER
Pietragallo, Bosick & Gordon
38th Floor, One Oxford Center
Pittsburgh, PA 15219

<u>Attorney for Appellees</u>

_____

     * Hon. Anita B. Brody, United States District Judge for the
Eastern District of Pennsylvania, sitting by designation.

OPINION OF THE COURT


BRODY, District Judge,

         Plaintiffs, a Pentecostal minister and his non-profit
incorporated ministry, appeal the grant of summary judgment on
their claims under 42 U.S.C. §§ 1983 and 1985(3) alleging that a
municipal borough and its council members violated their free
exercise and other rights by intentionally impeding access to
their tent revival meetings.  The District Court granted summary
judgment on the Free Exercise count because the plaintiffs had
not introduced sufficient evidence that the Borough's actions
placed a "substantial burden" on plaintiffs' religious exercise.
Because we believe that the pivotal issue in a case alleging
deliberate interference with religious activity is not the extent
of the burden on religious exercise, but instead whether the
defendants intended to impose a burden, we reverse the grant of
summary judgment on the Free Exercise claim, and remand to the
District Court for reconsideration of the record consistent with
our holding.

**I.**

         Taking all inferences to be drawn from the evidence in
a light most favorable to the plaintiffs/appellants, Matsushita
Electric Industrial Co. v. Zenith Radio, 475 U.S. 574, 585-589

(1986), the following events can be gleaned from the record before us.

Plaintiffs Reverend Andrew D. Brown and his Abundant Life Ministries arranged to conduct Pentecostal tent revival meetings in the Borough of Mahaffey from August 2-7, 1992. The plaintiffs had permission to hold the meetings on property owned by the Penn Central Corporation, which lies adjacent to a baseball park owned by the Borough called "Scout Park." Scout Park and the Penn Central property are divided by a dirt road owned by the Borough. Reverend Brown was also negotiating to purchase the Penn Central property.

At a Borough council meeting held shortly before the scheduled revival meetings the council members discussed a petition to erect a gate separating Scout Park from the Penn Central property. At the same meeting the council discussed how to handle plaintiffs' planned revival meetings. See Deposition of council member Bakaysa. The council summoned Reverend Brown to the meeting to discuss his plans for the revival. The discussion escalated into argument. Brown also informed the council that he was negotiating to purchase the Penn Central property. Defendant Bakaysa acknowledged that this circumstance angered the Council members.[1] The council members informed

_____

[1] The District Court also found that council members "upbraided Brown with abusive language." This fact does not appear in the record before us.

Reverend Brown of their intention to erect gates between the properties.  A gate was erected on July 29, 1992.

The parties eventually agreed that the gates would be opened each evening to accommodate the meetings.  The first two revival meetings occurred without event.  At the third meeting, on Tuesday, August 4, 1992, the plaintiffs found the gates locked.  Attendees of that night's meeting were unable to drive up to the tent; instead, they were forced to park outside the gate and walk 100 to 200 feet to reach the tent.  Plaintiffs contend that disabled individuals seeking the Ministry's faith healing were among the expected attendees, and may have been deterred from further attendance during the week because of the difficulty in reaching the tent.  Council member Bakaysa testified that he was aware that disabled individuals were among the expected worshippers.  Council members represented that they had intentionally locked the gate because of noise and activity on the site late at night on Monday.  Plaintiffs were never informed of the council members' decision to lock the gate.

After discussion between the parties, the Borough agreed to open the gate for the rest of the planned meetings; it did so on Wednesday and Thursday.  On Friday, August 7, 1992, the plaintiffs again encountered a locked gate that they attempted to break open.  Council member Kim Struble came over, and offered to open the gate; according to the plaintiffs the offer was made in a mocking manner.  The plaintiffs continued to try to break the

gate open.  Struble contacted council member Bakaysa who brought a state police officer to the scene.  The dispute was eventually resolved with Bakaysa and Reverend Brown agreeing that Reverend Brown would repair the gate, and the Borough promising not to press vandalism charges.

After the final revival meeting, on August 7, the plaintiffs who remained behind to clean up and pack the equipment found their egress blocked by the gate being locked again. Reverend Brown testified that he had earlier observed council members and police officers at the gate, and heard pounding at the gate preceding the time when he discovered the gate locked. The next morning, the plaintiffs opened the gate by breaking the bolt with a sledgehammer in order to remove their equipment.

In February, 1993, the Borough bought the Penn Central Property from Penn Central Corporation.  Defendants acknowledge becoming more motivated to purchase the property after becoming aware of the plaintiffs' hopes of purchasing the property.

The plaintiffs sued individual council members and the Borough under federal civil rights laws, 42 U.S.C. §§ 1983 and 1985(3), the Equal Protection Clause of the Fourteenth Amendment, and Pennsylvania law for damages and injunctive relief, alleging the following counts:  Free Exercise of Religion under the First Amendment; Freedom of Association under the First Amendment; Invasion of Privacy under the First and Fourteenth Amendments; Establishment Clause under the First Amendment; Equal Protection;

a general "constitutional tort" invasion under §§ 1983 and 1985(3); the Pennsylvania Human Relations Act; False Imprisonment; and Breach of Contract; and Interference with Prospective Economic Advantage.

The District Court granted summary judgment on all counts. The plaintiffs appealed the court's holding on plaintiffs' Free Exercise, Establishment Clause, Equal Protection, and "constitutional tort" counts.

## II.

The core of plaintiffs' Free Exercise contention is that the Borough manifested hostility towards their religious activity by intentionally locking the gate to impede access to the revival meetings. See Appellants' Brief at 11. The Free Exercise Clause of the First Amendment provides that Congress "shall make no law . . . prohibiting the free exercise of [religion]"; at its undisputed minimum this command enjoins government from intentionally burdening religious worship. Cf. Grosz v. City of Miami Beach, Florida, 721 F.2d 729, 733-34 (11th Cir. 1983), cert. denied, 469 U.S. 827 (1984) ("governmental action violates the Constitution if it is based upon disagreement with religious tenets or practices, or is aimed at impeding religion"); see also Robert H. Bork, The Supreme Court and the Religious Clauses, Proceedings of the National Religious Freedom Conference of the Catholic League for Religious and Civil Rights 83, 84 (1988) ("The free exercise clause might have been read

simply to prohibit laws that directly and intentionally penalize religious observance.  Instead, [it has] been read to have far greater breadth and severity.").  Indeed, "it was 'historical instances of religious persecution and intolerance that gave concern to those who drafted the Free Exercise Clause.'"  Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 113 S. Ct. 2217, 2226 (1993) (citation omitted).  This common understanding of the Free Exercise Clause has resulted in the circumstance that "few States would be so naive as to enact a law directly prohibiting or burdening a religious practice as such." Employment Division, Department of Human Resources of Oregon v. Smith, 494 U.S. 872, 894 (1990) (O'Connor, J. concurring).

The District Court ruled that plaintiffs' Free Exercise claim failed because "even assuming that plaintiffs' suspicions about the defendants biases and motivations are true . . . the plaintiffs have not adduced evidence of a 'substantial burden'", as required by the Religious Freedom Restoration Act, 42 U.S.C. § 2000.  This analysis is inappropriate for a free exercise claim involving intentional burdening of religious exercise.  The "substantial burden" requirement was developed in the Supreme Court's free exercise jurisprudence, and codified in the Religious Freedom Restoration Act, 42 U.S.C. § 2000, in order to balance the tension between religious rights and valid government goals advanced by "neutral and generally applicable laws" which create an incidental burden on religious exercise.  See

Employment Division, 494 U.S. at 894 (O'Connor, J. concurring) ("we have respected both the First Amendment's express textual mandate and the governmental interest in regulation of conduct by requiring the government to justify any substantial burden on religiously motivated conduct . . . "). See also Michael W. McConnell, The Origins and Historical Understanding of Free Exercise of Religion, 103 HARV. L. REV. 1409 (1990). The rare cases which address acts or laws which target religious activity have never limited liability to instances where a "substantial burden" was proved by the plaintiff. See e.g. Lukumi Babalu Aye, 113 S. Ct. 2217. Applying such a burden test to non-neutral government actions would make petty harassment of religious institutions and exercise immune from the protection of the First Amendment. A burden test is only necessary to place logical limits on free exercise rights in relation to laws or actions designed to achieve legitimate, secular purposes. Because government actions intentionally discriminating against religious exercise a fortiori serve no legitimate purpose, no balancing test is necessary to cabin religious exercise in deference to such actions.

Accordingly, the determinative issue for the trial court on summary judgment was not whether the plaintiffs had proffered sufficient evidence to create a material issue of fact regarding the extent of the burden created -- a test which the plaintiffs fail -- but instead whether there is sufficient

evidence to create a material issue of fact regarding whether the defendants intentionally impeded the plaintiffs' religious activity. We therefore remand to the District Court for a determination, based on consideration of the entire record, of whether the plaintiff has introduced sufficient evidence on the issue of intentional targeting to resist summary judgment.

<strong>III.</strong>

The other issues raised by plaintiffs on appeal constitute little more than a repackaging of the free exercise count to fit other constitutional labels. The Establishment Clause of the First Amendment restricts government capacity to favor a religion, or religion in general. The plaintiffs contend that the hostility displayed and the impediments imposed on their own religious exercise translates into favoritism towards every other religion. This logic would transform every viable free exercise action into an Establishment Clause claim. Such a circumstance finds no support in Establishment Clause jurisprudence.

A government action is subject to "strict scrutiny" under the Equal Protection Clause of the Fourteenth Amendment if it discriminates against a "suspect class," or if it interferes with a "fundamental right." Kardmas v. Dickinson Public Schools, 487 U.S. 450, 457-58 (1988). The plaintiffs argue that the violation of their fundamental right to free exercise of religion constitutes an equal protection violation. However, in order to

maintain an equal protection claim with any significance independent of the free exercise count which has already been raised, the plaintiffs must also allege and prove that they received different treatment from other similarly situated individuals or groups.  City of Cleburne v. Cleburne Living Center, 473 U.S. 432 (1985); Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990); Jordan v. Jackson, 15 F.3d 333, 355 (4th Cir. 1994)  The plaintiffs have proffered no evidence to that effect.

In addition to the alleged Free Exercise, Establishment Clause, and Equal Protection claims, the plaintiffs state a separate claim under 42 U.S.C. §§ 1983 and 1985 (3) for "constitutional torts by and of themselves."  Brief of Appellants at 31.  The plaintiffs must assert a specific federal constitutional or statutory right in order to maintain a claim under the civil rights laws.  See Albright v. Oliver, 114 S. Ct. 807, 811 (1994) ("[t]he first step in any [1983] claim is to identify the specific constitutional right infringed").  The plaintiffs have asserted several constitutional violations; they cannot attach a "catch-all" tort claim as a fallback if those specific constitutional claims fail.

## IV.

We will therefore reverse the District Court's grant of summary judgment on the plaintiffs' free exercise claim and remand that issue to the District Court for proceedings

consistent with this opinion.  We will affirm on all other

counts.