196 F.3d 1046 (9th Cir. 1999)
 KDM, a minor, by and through WJM, his father and next friend, Plaintiff-Appellant,
v.
REEDSPORT SCHOOL DISTRICT; NORMA PAULUS, in her official capacity as Oregon Superintendent of Public Instruction, Defendants-Appellees.
KDM, a minor, by and through WJM, his father and next friend, Plaintiff-AppellantCross-Appellee,
v.
REEDSPORT SCHOOL DISTRICT, Defendant,
and
NORMA PAULUS, in her official capacity as Oregon Superintendent of Public Instruction, Defendant-Appellee-Cross-Appellant.
 No. 98-35186, No. 98-35187
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted March 1, 1999--Portland, Oregon
Filed November 15, 1999
 
 1
 David C. Gibbs, III, Gibbs & Craze, Seminole, Florida, and Harold B. Scoggins, III, Farleigh, Wada & Witt, P.C., Portland, Oregon, for the plaintiffs-appellants/cross-appellees.
 
 
 2
 Janet A. Metcalf, Assistant Attorney General, Salem, Oregon, for the defendant-cross-appellant/appellee.
 
 
 3
 Appeal from the United States District Court for the District of Oregon; Michael R. Hogan, Chief Judge, Presiding. D.C. No. CV-96-06075-MRH, D.C. No. CV-96-06075-MRHBefore: Andrew J. Kleinfeld and Michael Daly Hawkins, Circuit Judges, and William W Schwarzer,* Senior District Judge.
 
 
 4
 Opinion by Judge Schwarzer; Dissent by Judge Kleinfeld
 
 SCHWARZER, Senior District Judge:
 
 5
 WJM's son, KDM, is a minor who is legally blind and has cerebral palsy. As such, KDM is a "child with disabilities" entitled to special education and related services under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. SS 1400-1485 (1994). Oregon provides such services to children enrolled in public schools. The Oregon administrative regulation leaves it to the discretion of individual school districts whether to provide such services to children enrolled in private school but specifically provides that "such special education and related services shall be provided in a religiously-neutral setting." OAR 581-15-166 (the "regulation").[1] Defendant Reedsport School District ("District") is willing to provide such services to KDM, but not at KDM's parochial school. We must decide whether the District's refusal to provide services at the school violates the IDEA or KDM's rights under the Free Exercise, Establishment, or Equal Protection Clauses of the Constitution.
 
 I. FACTUAL AND PROCEDURAL BACKGROUND
 
 6
 While attending public school, KDM received from the District the services of a vision specialist, physical therapy and special equipment at his school. Motivated by sincerely held religious beliefs, KDM's parents transferred him to Harbor Baptist Church School ("Harbor Baptist"), a sectarian school. After the transfer, the District continued to supply him with special equipment (braillers, computers and other special equipment) at his new school. However, viewing the Harbor School setting as not religiously-neutral, it no longer supplied the vision specialist at the school. Instead, it provided that service at a fire hall down the street from Harbor Baptist. The adequacy of the service is not in dispute nor is it disputed that it is safe for KDM to travel to and from the fire hall, transportation being provided by the District. The service is provided for approximately ninety minutes twice a week. If this service were provided at Harbor Baptist,it would be provided in a room separate from the classroom because providing it in class could be disruptive to the instruction both of KDM and the other students in the classroom.
 
 
 7
 KDM brought this action through his father, WJM, against the District and Norma Paulus, Oregon's Superintendent for Public Instruction, for declaratory and injunctive relief requiring the defendants to place a vision specialist at Harbor Baptist. Plaintiff, in substance, made three claims: First, that defendants' refusal to provide a vision specialist at School violates the IDEA; second, that it violates the Free Exercise and Establishment clauses of the First Amendment; and, third, that it denies plaintiff the equal protection of the laws. Following a bench trial on stipulated facts, the district court entered judgment holding that the IDEA did not require the district to provide services at a private school, but that the Oregon regulation which permits services to be offered private school students only in a religiously-neutral setting violated the Free Exercise, Establishment and Equal Protection Clauses and enjoined its enforcement.[2] We have subject matter jurisdiction under 20 U.S.C. S 1415(e)(2) and appellate jurisdiction under 28 U.S.C. S 1291 (1994), and review the district court's legal conclusions de novo. See Walters v. Reno, 145 F.3d 1032, 1047 (9th Cir. 1998), cert. denied, 67 U.S.L.W. 3337 (U.S. Mar. 8, 1999). We now reverse the judgment.[3]
 
 
 8
 II. THE IDEA DOES NOT REQUIRE THE DISTRICT TO PROVIDE SERVICES AT KDM's PRIVATE SCHOOL
 
 
 9
 Plaintiff cross-appealed, contending that the IDEA requires the District to provide KDM with services on site at Harbor Baptist. While the IDEA requires states to provide some measure of special education and related services to disabled children in private schools, see 20 U.S.C.A. S 1412(a)(10)(A) and (C) (Supp. 1998); see also 34 C.F.R. S 300.403-.452, since its amendment in 1997, the act has specifically provided that "[s]uch services may be provided to children with disabilities on the premises of private, including parochial, schools, to the extent consistent with law." 20 U.S.C.A. S 1412(a)(10)(A)(I)(II) (emphasis added). Every circuit that has considered whether the IDEA as amended in 1997 requires services to be provided on site at a private school has concluded it does not. See Foley v. Special Sch. Dist., 153 F.3d 863, 865 (8th Cir. 1998) ("Clare and her parents now have no individual right under IDEA to the special education and related services in question, so they have no right to a federal court decree mandating that those services be provided at a particular location."); Russman v. Board of Educ., 150 F.3d 219, 221-22 (2d Cir. 1998) ("[S]tates are required to provide to children voluntarily enrolled in private schools only those services that can be purchased with a proportionate amount of the federal funds received under the program . . . . [The] statute does not require a school district to provide on-site services to a disabled child who is voluntarily enrolled in private school."); Fowler v. Unified Sch. Dist. No. 259, 128 F.3d 1431, 1436-37 (10th Cir. 1997) ("[T]he [school district's] sole obligation is to spend on such students . . . `a proportionate amount of Federal funds,' . . . ."); K.R. v. Anderson Community Sch. Corp., 125 F.3d 1017, 1018 (7th Cir. 1997) (affirming prior decision, 81 F.3d 673 (7th Cir. 1996), that the IDEA does not require provision of services at a private school), cert. denied, 118 S. Ct. 1360 (1998); Cefalu v. East Baton Rouge ParishSch. Bd., 117 F.3d 231, 233 (5th Cir. 1997) ("We therefore hold unambiguously that the defendants were not legally obligated to provide an on-site sign language interpreter to the plaintiff at the private school."). We agree with those courts and conclude that the district court properly declined to grant plaintiff relief under the IDEA.
 
 
 10
 III. THE OREGON REGULATION AS APPLIED DOES NOT VIOLATE THE FEDERAL CONSTITUTION
 
 A. The Free Exercise Clause
 
 11
 The narrow question before us is whether the free exercise rights of KDM and his parents were impermissibly burdened by the application of Oregon's regulation, which precludes the District from providing special education services to KDM at the sectarian school he attended. In deciding that question we are guided by the distinction the Supreme Court has recognized in the Establishment Clause context between a statute's invalidity on its face and its invalidity in particular applications. See Bowen v. Kendrick , 487 U.S. 589, 602 (1988); see also Hunt v. McNair, 413 U.S. 734, 742 (1973) (examining only "the transaction presently before [the court]" and not "the statute as a whole"); Zobrest v. Catalina Foothills Sch. Dist., 963 F.2d 1190, 1194 n.3 (9th Cir. 1992) (considering "only the validity of one very specific proposed application of the statutes at issue"), rev'd on other grounds, 509 U.S. 1 (1993). Whatever the impact of the regulation might be in other factually distinct situations, cf. Zobrest, 963 F.2d at 1192 (failure to provide sign-language interpreter in the classroom for plaintiff effectively forced his parents to choose between foregoing a sectarian education or paying for the cost of the interpreter themselves) and Peter v. Wedl, 155 F.3d 992 (8th Cir. 1998) (failure to provide spastic quadriplegic student with needed full-time paraprofessional while in school forced choice between foregoing sectarian education or paying for the paraprofessional), this is not a case in which the regulation impinges on plaintiffs' free exercise rights. The parties stipulated that the service provided to KDM at the fire hall down the street from the school twice a week for ninety minutes is in compliance with KDM's statutory individualized education plan, the adequacy of which is not in dispute, and that he could safely travel there--indeed, the vision specialist comes to KDM's school, picks him up and then returns him to his school. Moreover, plaintiffs have stipulated that the vision specialist's services would not be provided in-class at Harbor Baptist but in a separate room. Thus, there is no support for the district court's finding that the regulation forces KDM and his parents to choose between enrolling at Harbor Baptist and receiving special education at the fire hall or enrolling at a nonreligious school and receiving in-class services. In sum, there is no showing that application of the regulation to KDM's case burdens KDM's or his parents' free exercise of their religion.
 
 
 12
 While the Oregon regulation is not "neutral" because it restricts the provision of services to "religiously-neutral settings," cf. Employment Division v. Smith , 494 U.S. 872, 878 (1990), as applied here it does not have "the object or purpose . . . [of] suppression of religion or religious conduct." Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 533 (1993). KDM is not subjected to"[o]fficial action that targets religious conduct for distinctive treatment." Id. at 534. His case is wholly unlike Brown v. Borough of Mahaffey, 35 F.3d 846 (3d Cir. 1994), involving the deliberate installation by the city of a gate impeding access to a particular revival meeting, or Hartmann v. Stone , 68 F.3d 973 (6th Cir. 1995), involving an Army regulation banning all religious practice by day care providers on the base. Nor is Peter v. Wedl analogous because under thefacts of that case, as noted, plaintiff indeed was forced to choose between enrolling in the sectarian school or receiving services essential to his ability to attend school. 155 F.3d at 1001.
 
 
 13
 That the regulation, standing alone, "discriminates" against students in religious schools, i.e., treats them differently by denying them state services on the school grounds, does not result in a burden on the free exercise of religion by someone in the position of KDM or his parents. We agree with the court in Strout v. Albanese, 178 F.3d 57 (1st Cir. 1999), cert. denied, U.S., 120 S.Ct. 329, L.Ed.2d (October 12, 1999), upholding, against a Free Exercise challenge, a Maine statute funding grants to private schools for students in communities without public education facilities, provided the schools are nonsectarian. The court distinguished Lukumi because there was no evidence of "a substantial animus . . . that motivated the law in question." Id. at 65. Here, the District's solicitousness in accommodating KDM could hardly be said to reflect a purpose to "suppress[ ] religion or religious conduct." The mere fact that the District makes its service to KDM available in the fire hall down the street from his school does not amount to suppression of religion or religious conduct.
 
 
 14
 We conclude that Oregon's regulation as applied to KDM and his parents does not impose an impermissible burden on their free exercise of religion.
 
 B. The Establishment Clause
 
 15
 The district court also found that the Oregon regulation violates the Establishment Clause because it requires the State Superintendent of Education to decide on a case-by-case basis whether particular settings are religious. Since Zobrest, the mere presence of a public employee on religious premises clearly is not enough to invoke the Establishment Clause. See Zobrest, 509 U.S. at 13; see also Agostini v. Felton, 521 U.S. 203, 234 (1997) ("[A]fter Zobrest we no longer presume that public employees will inculcate religion simply because they happen to be in a sectarian environment.").
 
 
 16
 In Agostini, the Supreme Court held that monthly visits by supervisors to parochial school classrooms to ensure that remedial education provided by public school teachers remained secular did not result in excessive entanglement under the test of Lemon v. Kurtzman, 403 U.S. 602, 612-13 (1971). Agostini is merely the latest in a line of cases rejecting an entanglement claim when applied to the making of judgments by officials overseeing regulatory schemes concerning the religious character of activities. See Hernandez, 490 U.S. at 696-97 (1989) ("[R]outine regulatory interaction which involves no inquiries into religious doctrine, . . . and no `detailed monitoring and close administrative contact' between secular and religious bodies, does not of itself violate the nonentanglement command." (citations omitted)); Mueller v. Allen, 463 U.S. 388, 403 (1983) (finding no entanglement despite the fact that state officials required to determine whether textbooks were religious); Board of Educ. v. Allen, 392 U.S. 236, 245 (1968) (same).
 
 
 17
 We conclude that the regulation does not offend the entanglement prong of the Lemon test. We need go no further because the district court did not determine that it offended the first (secular purpose), or second (primary effect to advance or inhibit religion), prong of the test.
 
 C. The Equal Protection Clause
 
 18
 The district court held that the regulation violates the Equal Protection Clause because it "has the effect of allowing in-class services to disabled students at non-religious schools while prohibiting in-class services to disabled students at religiousschools, both public and private . . . . Absent an antiestablishment interest, however, such a distinction lacks a rational, let alone compelling, justification." Because parochial school students are not a suspect class, scrutiny of their treatment by the state is under the rational basis test. See City of New Orleans v. Dukes, 427 U.S. 297, 303-04 (1976); Zobrest, 963 F.2d at 1197 n.6. While under Zobrest the federal Establishment Clause raises no bar to providing on-site services to disabled students at sectarian schools, for purposes of equal protection analysis, Oregon's interpretation of its constitutional separation requirement remains a legitimate state interest. The parties stipulated that "[t]he State of Oregon interprets Article I, S 5, of its constitution to require the provision of special education and related services in a religiously-neutral setting." See Or. Const. art. I, S 5; Lowe v. City of Eugene, 463 P.2d 360, 364 (Or. 1969) (describing art. I, S 5 as an expression of Oregon's commitment to the doctrine of separation of church and state); see also Cooper v. Eugene Sch. Dist. No. 4J, 723 P.2d 298, 312 (Or. 1986) (upholding Oregon state statute prohibiting school teacher from wearing religious dress while on duty, finding religious garb incompatible "with the school's commitment to maintaining . . . the atmosphere of religious freedom and neutrality . . . ."); Strout, 178 F.3d at 67 ("The Maine legislature rationally could have believed that including sectarian schools within its funding scheme would or might violate the establishment clause." (Campbell, J., concurring)); Luetkemeyer v. Kaufmann, 364 F. Supp. 376, 382 (W.D. Mo. 1973), aff'd, 419 U.S. 888 (1974) (finding no equal protection violation by Missouri's denial of bus service to parochial school student because of state's legitimate interest in maintaining separation of church and state). We conclude that KDM and his parents have not been denied the equal protection of the laws[4].
 
 CONCLUSION
 
 19
 The judgment is REVERSED.
 
 
 
 Notes:
 
 
 *
 The Honorable William W. Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.
 
 
 [1]
 OAR 581-15-166 states in full:
 Public Educational Agency Responsibility for Children Placed by Parents in Private Schools
 (1) If a child with a disability, who is three through the age of eligibility for kindergarten, is offered a free and appropriate public education by the Department of Education and the parent of the child unilaterally enrolls the child in a private school, the child shall not have an individual entitlement to receive special education and related services from the Department of Education. Consistent with the procedures set forth in OAR 581-15-171, the Department of Education shall determine which children with disabilities shall receive services, what services shall be provided and how those services shall be provided, including the location for delivery of those services.
 (2) If a child with a disability, who is at the age of eligibility for kindergarten through age 21, is offered a free appropriate public education by the child's resident school district and the parent of the child unilaterally enrolls the child in a private school, the child shall not have an individual entitlement to receive special education and related services from the child's resident school district. Consistent with the procedures set forth in OAR 581-15-171, resident school districts shall determine which children with disabilities shall receive services, what services shall be provided and how those services shall be provided, including the location for the delivery of those services.
 (3) Such special education and related services shall be provided in a religiously-neutral setting.
 (4) The Department of Education and school districts shall provide such children with genuine opportunities for equitable participation in special education consistent with the number of children and their needs.
 
 
 [2]
 The record does not disclose whether Reedsport or other school districts provide services at nonsectarian private schools, but the regulation does not preclude them from doing so.
 
 
 [3]
 Because the court entered judgment only on Counts III and IV, plaintiff's constitutional claims, our mandate is limited to those counts.
 
 
 [4]
 In Zobrest, moreover, we rejected an equal protection claim on the ground that the Free Exercise Clause does not create a fundamental right to on-site special education services. See Zobrest, 963 F.2d at 1196 n.6; see also Norwood v. Harrison, 413 U.S. 455, 461-62 (1973) (denial of public funds to private schools not an equal protection violation). Although this court's judgment in Zobrest was reversed on the Establishment Clause ground, the Free Exercise portion of the opinion remains intact. See Chas. Wolff Packing Co. v. Court of Indus. Relations, 267 U.S. 552, 562 (1925) (quoting Mutual Life Ins. Co. v. Hill, 193 U.S. 551, 55354 (1904) ("[A] judgment of reversal is not necessarily an adjudication by the appellate court of any other than the question in terms discussed and decided.")).
 
 
 KLEINFELD, Circuit Judge, dissenting:
 
 20
 Under today's decision, the government may discriminate against people based on their exercise of religion, so long as the discriminatory burdens it imposes are not more substantial than requiring a blind child with cerebral palsy to leave his school building and go down the street to a fire hall. That is quite a surprise. Fortunately, that is not the law in most of the rest of the country. The Supreme Court,[1] and the Third,[2] Sixth,[3] and Eighth[4] Circuits have all held to the contrary -the Eighth Circuit in a case materially identical to this one. Unfortunately, that will be the law in this circuit, if the majority opinion stands.
 
 
 21
 The reason that the majority gets the wrong answer is that it asks the wrongquestion. The majority formulates the question in this case as whether the regulation requiring special education to be provided in "a religiously-neutral setting"[5] imposes "an impermissible burden on [KDM's and his parents'] free exercise of religion." Because going down the street to the fire hall is only a slight inconvenience, the majority concludes that the government may burden religion to this extent, even though a student with the same afflictions in a private secular school would not have to go down the street to the fire hall for his special education services. As for why treating children in religious schools differently does not violate the Equal Protection Clause, the majority says that because religious school students are not a "suspect class," a rational basis for the distinction is enough, and Oregon's desire to avoid religiosity in education, in order to avoid anything that might amount to an establishment of religion, is a rational basis.
 
 
 22
 The technical reason why the majority's formulation is wrong is that the majority asks a question developed in cases involving neutral laws of general applicability, even though, as the majority concedes, this case involves a non-neutral law. The substantial burden test has only been applied to free exercise challenges of neutral and generally applicable laws, and it survives Employment Division v. Smith,[6] if at all, only where "a neutral, generally applicable regulatory law"[7] implicates a combination of the Free Exercise Clause and another constitutional right, such as "the right of parents . . . to direct the education of their children."[8] The regulation at issue here is not neutral on its face. By requiring a "religiously-neutral setting," the government expressly and intentionally discriminates against religious as opposed to secular private schools. Oregon could lawfully provide the services only in public and not in private schools. But having decided to provide the services in private schools, Oregon cannot discriminate against religious schools without violating the Constitution.
 
 
 23
 When the government, by a law not neutral on its face, treats people of one or all religions better or worse than others, the constitutional question is traditionally formulated so that the answer has to be "No!" Church of Lukumi Babalu Aye, Inc. v. Hialeah[9] states the test we are required to apply to non-neutral laws such as Oregon's special education regulation. Such a law gets "the most rigorous of scrutiny," must advance " `interests of the highest order,' " and must be "narrowly tailored."[10] That test, of course, is generally too stringent for any law to pass. Few laws singling out a particular religion or religion in general for special burdens, even slight burdens, can satisfy this test.
 
 
 24
 The law at issue in this case, requiring special education to be provided in "a religiously-neutral setting,"[11] violates KDM's rights under the Free Exercise and Equal Protection Clauses. Handicapped children at secular private schools get special education in their schools, but handicapped children at religious private schools must leave school to get the same special education. This law violates the Constitution because it distinguishes between people and burdens some of them on account of their religious practices.
 
 
 25
 The majority puts us at odds with three other circuits to have considered analogous issues. In the rare cases where states have burdened religion, even insubstantially, by laws that are not neutral, courtshave almost uniformly held the laws unconstitutional. The only circuit to have considered the proposition that today's majority adopts, that plaintiffs must show a "substantial" or "impermissible" burden for a Free Exercise challenge, has rejected the proposition.
 
 
 26
 In Brown v. Borough of Mahaffey,[12] a municipality erected a gate on public land to obstruct travel through a park to revival services held on adjacent private land. Alternate access was available, and the obstruction was but a slight additional burden for those going to the revival. The Third Circuit rejected the municipality's argument that the plaintiffs had failed to show that the gate imposed a substantial burden and held that "[t]he rare cases which address acts or laws which target religious activity have never limited liability to instances where a `substantial burden' was proved by the plaintiff."[13] The court explained that "[t]he `substantial burden' requirement was developed in the Supreme Court's free exercise jurisprudence . . . in order to balance the tension between religious rights and valid government goals advanced by `neutral and generally applicable laws' which create an incidental burden on religious exercise."[14] "Because government actions intentionally discriminating against religious exercise a fortiori serve no legitimate purpose, no balancing test is necessary to cabin religious exercise in deference to such action."[15]
 
 
 27
 Similarly, in Hartmann v. Stone,[16] an army regulation forbid on-base child-care providers from using "[r]eligious materials or activities specifically designed to teach or promote religious doctrine."[17] The Sixth Circuit held that because the regulation was not neutral and generally applicable, it had to be narrowly tailored to serve a compelling state interest; it was not, so the Sixth Circuit held that the Army Regulation violated the Free Exercise Clause. The court expressly rejected the proposition, accepted by today's majority, that a state's desire to assure the fullest compliance with the Establishment Clause was a sufficiently compelling interest to save the regulation.
 
 
 28
 Peter v. Wedl[18] is materially identical to the case we decide today, yet the Eighth Circuit reaches the opposite conclusion from today's majority. In Peter, a Minnesota school district rule prohibited special education services from being provided except in religiously "neutral" schools, whether private or public.[19] The Eighth Circuit held that the rule violated the Free Exercise, the Free Speech, and the Equal Protection Clauses. "Government discrimination based on religion violates the Free Exercise Clause of the First Amendment."[20] Like the Sixth Circuit in Hartmann, the Eighth Circuit expressly rejected Minnesota's argument that the law was constitutionally valid because of the state's interest in assiduous compliance with the Establishment Clause.
 
 
 29
 The majority has not offered any persuasive distinction between this case and the Supreme Court decision in Lukumi or the Third, Sixth, and Eighth Circuit decisions. The majority says Lukumi does not apply here because Oregon's regulation does not have as its object suppression of religion or religious conduct. I am not sure why the majority thinks this isthe right question to ask -government discrimination against one or all religions is unconstitutional even if suppression is not the object. "At a minimum, the protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs . . . ."[21] Even if the extent of the burden mattered (which it does not because the Oregon regulation is not neutral toward religion), the exercise of religious convictions is substantially burdened here. Religions have commanded for at least three millennia that parents educate their children in their religious beliefs. "Therefore impress these My words upon your very heart: bind them as a sign on your hand and let them serve as a symbol on your forehead, and teach them to your children . . . ."[22] Under Oregon's regulation, if a blind child with cerebral palsy goes to a secular private school, he gets special education in his school, but if he goes to a religious private school, he has to take a trip down the street for special education. The Free Exercise Clause entitles people to live their lives in accord with their religious beliefs, not just to say their prayers, without having the government intentionally discriminate against them for doing so.
 
 
 30
 The majority attempts to limit Lukumi to situations where there is evidence that substantial animus to repress religion motivated the law in question. That is a misreading. Lukumi considered the anti-Santeria animus that motivated an arguably facially neutral law against animal sacrifice as a basis for treating the law as non-neutral. The Court held that"[f]acial neutrality is not determinative . . . . [because t]he Free Exercise Clause, like the Establishment Clause, extends beyond facial discrimination."[23] Facial discrimination, on the other hand, is almost always determinative. "The Free Exercise Clause protects against governmental hostility which is masked as well as overt."[24] Once there is a non-neutral law, as the majority has conceded that we have here, the test under Lukumi is clear -"a law restrictive of religious practices must advance `interests of the highest order' and must be narrowly tailored in pursuit of those interests."[25] "Animus" reclassifies a facially neutral law as one that targets religion. "Animus" is immaterial here because the law at issue is not facially neutral, but treats people differently according to whether their school is religious.
 
 
 31
 The majority fails to adequately distinguish the Third, Sixth, and Eighth Circuit decisions. The majority claims to distinguish Brown on the ground that it involved the deliberate burdening of a religious exercise, but that distinction is false; the Oregon regulation at issue here intentionally distinguishes between religious and "religiously-neutral" private schools. That is a deliberate burdening of one, and a benefitting of the other. The majority says Hartmann involved a regulation "banning all religious practices by day care providers on the base," but does not say why this should be distinguished from banning all special education services in religious settings. They are the same for this purpose. The majority's attempt to distinguish Peter makes no sense because, there, as here, the regulation allowed special education services only at a religiously "neutral site."[26] The majority purports to rely on a fact that was irrelevant to the Eighth Circuit's holding, and quotes only from dictum on an alternative argument that the Eighth Circuit did not reach.[27] That case and this one are, for analytic purposes, carbon copies.
 
 
 32
 There is no such thing as a de minimis exception to the Equal Protection Clause.[28] The government cannot discriminate against people because of their religion, even where the burden it imposes for that reason is only what the majority considers a slight inconvenience. And there is no such thing as a de minimis exception to the Establishment Clause. Lee v. Weisman[29] holds that the "embarrassment and the intrusion of the religious exercise cannot be refuted by arguing that [a clergyman's] prayers [at a public school graduation ceremony], and similar ones to be said in the future, are of a de minimis character."[30] It follows that there is also no such thing as a de minimis exception to the Free Exercise Clause.
 
 
 33
 The government can no more discriminate against religion in general than against a particular religion. The claimed interest of Oregon, on which today's majority relies, "in achieving greater separation of church and State than is already ensured under the Establishment Clause of the Federal Constitution -is limited by the Free Exercise Clause . . . ."[31] The school would not violate the Establishment Clause by providing the special education services to the handicapped child in this case, which it provides generally to all children in their public or private schools, in his religious school.[32] To the extent that Oregon bases the "religiously-neutral setting" regulation on a "better safe than sorry" approach to the Establishment Clause, the Free Exercise Clause prevents the government from making itself safe from Establishment Clause challenges by making adherents of religion sorry. The "First Amendment forbids an official purpose to disapprove of a particular religion or of religion in general ."[33] The Constitution mandates "neutrality between religion and non-religion."[34] "Withholding access would leave an impermissible perception that religious activities are disfavored."[35] Discriminating against religious schools in a program of otherwise general availability makes no sense as a strategy for avoiding an establishment of religion, because "treating everyone the same without regard to religion is hard to see as`establishing' anything -except equality."[36]
 
 
 34
 One traditional test of the correctness of a legal proposition is to apply it to a case where we can be confident of the right answer, and see whether the proposition yields the wrong answer. We do the same thing to test a spreadsheet, by entering data where we know what the answer should be to see if the spreadsheet properly generates it. The majority today concludes that so long as the practice of religion is not more substantially burdened than requiring a blind child with cerebral palsy to leave his school building and go down the street for special education services, the government may treat that child less favorably than others on account ofhis religion. Will this rule yield the right answer if applied to something we would all agree was outrageous, say a government requirement that all Jews wear armbands displaying stars of David? I am confident that today's majority would be as appalled as I am by such a law and would hold it unconstitutional, but it would be hard for the majority to get the right result from its holding in this case. The majority holds today that a law may impose a discriminatory burden on religion, so long as there is a rational purpose for the law and the burden is no greater than requiring a blind child with cerebral palsy to leave his school and go down the street for special education services. The physical burden of wearing the armband is far less. The historical associations with the armband are horrifying, but our government would doubtless have a more beneficent purpose and could articulate some rational basis, perhaps implementation of some public safety or antidiscrimination program. The hypothetical case could be modified to soften the historical association by positing a law requiring adherents of all religions to wear armbands announcing their faiths. Today's majority says the only question is whether the special imposition on religion "impermissibly burden[s]...the free exercise rights of KDM and his parents." That cannot be so. Most religions allow their adherents to wear and display symbols of the faith, but that does not entitle the government to require such displays. As the armband example makes clear, and as Lukumi makes explicit, that is not the only question. Although the Oregon law imposes no stigma comparable to the armbands, children must learn from the Oregon regulation that their government regards religious schools as bad in some way, places in which it will not deign to provide services available in all other public and private schools, like the "impermissible" perception that religious activities are disfavored in Rosenberger.
 
 
 35
 The Free Exercise Clause prohibits government anticlericalism as vigorously as the Establishment Clause prohibits government from preferring a particular religion. Our revolution, unlike, say, the French, Mexican, or Russian, evinced no hostility to any organized religion. Our founding manifesto, the Declaration of Independence, says that people are "endowed by their Creator" with their fundamental rights. The Establishment Clause and the Free Exercise Clause are not in tension, as though one said people can practice their religion, and the other said "but not in public. " The Free Exercise and Establishment Clauses complement each other, both advancing the purpose of freedom of religion. One guarantees individuals the right to freely exercise their religion, and the other assures that this free exercise will be unburdened by government preference for a different religion.[37] Americans are entitled to a government that does not discriminate against them because of their religion, even with burdens that those who do not bear them see as merely a slight inconvenience.
 
 
 
 Notes:
 
 
 [1]
 Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520 (1993).
 
 
 [2]
 Brown v. Borough of Mahaffey, 35 F.3d 846 (3d Cir. 1994).
 
 
 [3]
 Hartmann v. Stone, 68 F.3d 973 (6th Cir. 1995).
 
 
 [4]
 Peter v. Wedl, 155 F.3d 992 (8th Cir. 1998).
 
 
 [5]
 Or. Admin. R. 581-15-166(3).
 
 
 [6]
 Employment Div. v. Smith, 494 U.S. 872 (1990).
 
 
 [7]
 Id. at 880.
 
 
 [8]
 Id. at 881.
 
 
 [9]
 Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520 (1993).
 
 
 [10]
 Id. at 546.
 
 
 [11]
 Or. Admin. R. 581-15-166(3).
 
 
 [12]
 Brown v. Borough of Mahaffey , 35 F.3d 846, 849 (3rd Cir. 1994).
 
 
 [13]
 Id. at 850.
 
 
 [14]
 Id.
 
 
 [15]
 Id.
 
 
 [16]
 Hartmann v. Stone, 68 F.3d 973, 979 (6th Cir. 1995).
 
 
 [17]
 See id. at 977.
 
 
 [18]
 Peter v. Wedl, 155 F.3d 992 (8th Cir. 1998).
 
 
 [19]
 See id. at 994.
 
 
 [20]
 Id. at 995.
 
 
 [21]
 Lukumi, 508 U.S. at 532.
 
 
 [22]
 Deuteronomy 11:18-19 (emphasis added).
 
 
 [23]
 Lukumi, 508 U.S. at 534.
 
 
 [24]
 Id.
 
 
 [25]
 Id. at 546.
 
 
 [26]
 Id. at 994.
 
 
 [27]
 See id. at 1001.
 
 
 [28]
 Monterey Mechanical Co. v. Wilson, 125 F.3d 702, 712 (9th Cir. 1997).
 
 
 [29]
 Lee v. Weisman, 505 U.S. 577 (1992).
 
 
 [30]
 Id. at 594.
 
 
 [31]
 Widmar v. Vincent, 454 U.S. 263, 276 (1981). Cf. Rosenberger v. Rector and Visitors of Univ. of Va., 515 U.S. 819, 846 (1995) ("There is no Establishment Clause violation in the University's honoring its duties under the Free Speech Clause."); Lamb's Chapel v. Center Moriches Union Free School District, 508 U.S. 384, 394 (1993) (rejecting compelling state interest in avoiding Establishment Clause violation).
 
 
 [32]
 Zobrest v. Catalina Foothills School District, 509 U.S. 1 (1993).
 
 
 [33]
 Lukumi, 508 U.S. at 532.
 
 
 [34]
 Hartmann, 68 F.3d at 978.
 
 
 [35]
 Rosenberger, 515 U.S. at 846 (O'Connor, concurring) (summarizing the principle of neutrality toward religion).
 
 
 [36]
 Eugene Volokh, Equal Treatment Is Not Establishment, 13 Notre Dame J.L. Ethics & Public Policy 341, 345 (1999).
 
 
 [37]
 See Michael W. McConnell, Religious Freedom at a Crossroads, 59 U. Chi. L. Rev. 115, 117 (1992).