JOHN M. WALKER, JR., Circuit Judge,
dissenting:
The majority states that the “Free Exercise Clause ... has never been understood to require government to finance a subject’s exercise of religion.” Maj. Op. at 190. Allowing an entity to use public school space open to all others on equal terms is hardly the financing of that entity. However, shutting the door to religious worship services in such a setting when every other activity is permitted strikes at the Clause’s core. “Indeed, it was historical instances of religious persecution and intolerance that gave concern to those who drafted the Free Exercise Clause.” Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 532, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993) (internal quotation marks omitted). To this end, “[a]t a minimum, the protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons.” Id. In my view, the Board of Education’s policy that disallows “religious worship services” after hours in public schools — limited public fora that are otherwise open to all — violates the Free Exercise Clause because it plainly discriminates against religious belief and cannot be justified by a compelling government interest. I would affirm the district court’s permanent injunction.
Department of Education Regulation of the Chancellor D-180 § I.Q. (“Reg.I.Q.”) prohibits the use of school facilities outside of school hours by outside groups “for the purpose of holding religious worship services, or otherwise using a school as a house of worship.” The last time this case was before this court, we were asked to decide whether Reg. I.Q. violates the Free Speech Clause of the First Amendment. See Bronx Household of Faith v. Bd. of Educ. of N.Y., 650 F.3d 30 (2d Cir.2011) (“Bronx Household IV”). In my view, it does. The majority concluded that Reg. I.Q. is not viewpoint discriminatory because it excluded “the conduct of an event or activity that includes expression of a point of view,” not “the expression of that point of view.” Id. at 37. The majority held that Reg. I.Q. is a content-based exclusion that is constitutionally permissible because “it was objectively reasonable for the Board to worry that use of the City’s schools for religious worship services ... [would] expose[ ] the City to a substantial risk of being found to have violated the Establishment Clause.” Id. at 43.
I dissented and now incorporate that dissenting opinion into this one by reference. It has never been disputed that the *206 Department of Education’s policies for the after-hours use of public school spaces created a limited public forum. Id. at 36. I concluded in Bronx Household IV that, under Good News Club v. Milford Central School, 533 U.S. 98, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001), Lamb’s Chapel v. Center Moriches Union Free School District, 508 U.S. 384, 113 S.Ct. 2141, 124 L.Ed.2d 352 (1993), and Rosenberger v. Rector and Visitors of the University of Virginia, 515 U.S. 819, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995), Reg. I.Q. is viewpoint discriminatory because it disallows expression solely because the expression is from a religious viewpoint. Bronx Household IV, 650 F.3d at 54-59 (Walker, J., dissenting). Moreover, I believed that the “majority’s attempt to differentiate between the conduct of an event, here labeled ‘services,’ and the protected viewpoints expressed during the event is futile because the conduct of ‘services’ is the protected expressive activity.” Id. at 56. I thus would have required the Board of Education to show a compelling justification for its viewpoint discrimination.
Particularly relevant to the current appeal, I also concluded that permitting religious groups to use school facilities for religious purposes pursuant to a neutral policy creating a limited public forum would not violate the Establishment Clause because such a policy would “neither promote[] nor endorse[] a religious message.” Id. at 61. Such a policy would not provide impermissible aid to religion; rather, it simply would provide a neutral forum for religious and non-religious expression alike. Id. at 64. I noted that, in Rosenberger, the Supreme Court stated that “ ‘[i]t does not violate the Establishment Clause for a [school] to grant access to its facilities on a religion-neutral basis to a wide spectrum of student groups, including groups that use meeting rooms for sectarian activities, accompanied by some devotional exercises.’ ” Id. at 63 (second alteration in original) (emphasis removed) (quoting Rosenberger, 515 U.S. at 842, 115 S.Ct. 2510). I thus concluded that the Board of Education could not raise the specter of Establishment Clause concerns as either a reasonable justification (under the majority’s holding) or a compelling justification (under my view that strict scrutiny applied) for Reg. I.Q.’s disallowance of religious worship services. Id. at 64.
I now turn to the issues presented in the current appeal.
I. Reg. I.Q.’s Ban on Religious Worship Services Must Be Justified by a Compelling Governmental Interest
A law that is not “neutral and of general applicability” and that affects religion “must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest.” Lukumi, 508 U.S. at 531-32, 113 S.Ct. 2217 (citing Emp’t Div. v. Smith, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990)). Reg. I.Q. is neither neutral nor generally applicable.
Reg. I.Q. is not neutral or generally applicable because it explicitly conditions use of school facilities on whether an organization is engaging in “religious worship services,” a term that by definition has no secular meaning and only burdens religious conduct. Such facial discrimination alone establishes that Reg. I.Q. is not neutral. See Lukumi, 508 U.S. at 533, 113 S.Ct. 2217. Moreover, it is not generally applicable because in both effect and operation it targets only religious conduct. By disallowing “religious worship services” as the majority has defined that term, Reg. I.Q. burdens many, although not all, religions and no secular organizations. It is thus “an impermissible attempt to target *207 ... religious practices.” Lukumi, 508 U.S. at 535, 113 S.Ct. 2217.
Concluding that Reg. I.Q. is neither neutral nor generally applicable in its treatment of religion is an easy call: the Department of Education states that its purpose in creating the policy was to “avoid both the fact and appearance of government endorsement of religion presented when plaintiffs and other congregations use public schools to engage in worship services.” Appellants’ Br. 39. The Department thus effectively concedes that its object “is to infringe upon or restrict practices because of their religious motivation.” Lukumi, 508 U.S. at 533, 113 S.Ct. 2217 (citing Smith, 494 U.S. at 878-79, 110 S.Ct. 1595).
Moreover, contrary to the majority’s contention, Bronx Household is sufficiently burdened by Reg. I.Q. to require that strict scrutiny apply. The question is “whether the [government action] imposes any burden on the free exercise of appellant’s religion.” Sherbert v. Verner, 374 U.S. 398, 403, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). We need not ask whether Bronx Household is “substantially burdened” because the government action here, in specifically targeting religious conduct, is not neutral and not generally applicable. See, e.g., Thomas v. Review Bd., 450 U.S. 707, 718, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981); Sherbert, 374 U.S. at 403, 83 S.Ct. 1790; Tenafly Eruv Assoc. v. Borough of Tenafly, 309 F.3d 144, 170 (3d Cir.2002) (“[T]here is no substantial burden requirement when government discriminates against religious conduct.”); Brown v. Borough of Mahaffey, 35 F.3d 846, 849-50 (3d Cir.1994) (holding that requiring plaintiffs to show a substantial burden from “non-neutral government actions would make petty harassment of religious institutions and exercise immune from the protection of the First Amendment”).
As the district court found, “the unopposed testimony is that P.S. 15 is the ‘only location in which [Bronx Household] can afford to gather as a full congregation without having to curtail other of their religious practices.’ ” Bronx Household of Faith v. Bd. of Educ. of N.Y., 876 F.Supp.2d 419, 427 (S.D.N.Y.2012). It is further undisputed that “no other location besides P.S. 15 currently facilitates the Church’s religious mandate to worship as an entire congregation.” Id. The burden on Bronx Household is made crystal clear “given the uniquely expensive and crowded real estate market in which the Church resides.” Id. at 428. In my view, forcing Bronx Household to relocate or suspend its services sufficiently burdens the free exercise of religion to require strict scrutiny.
The majority believes that this case should be decided under Locke v. Davey, in which strict scrutiny was not applied to a state-funded scholarship program for post-secondary education that allows students to attend qualified religiously affiliated institutions but disallows students to pursue a degree in theology while receiving the scholarship. 540 U.S. 712, 716, 124 S.Ct. 1307, 158 L.Ed.2d 1 (2004). Locke is not applicable here, however, because it dealt only with a government subsidy. The Court in Locke explicitly acknowledged that the scholarship at issue “is not a forum for speech,” and thus “cases dealing with speech forums are simply inapplicable.” Id. at 720 n. 3, 124 S.Ct. 1307. As discussed, Reg. I.Q. plainly creates a limited public forum. See Bronx Household IV, 650 F.3d at 36. Reg. I.Q. is not a government subsidy: the Department of Education charges the same rate to all organizations using its facilities. Whereas Locke dealt with directly funding the training of religious clergy, here we are dealing with discriminating against religious exer *208 cise in a forum set aside for community-based expression.
Because I believe that Reg. I.Q. is neither neutral nor generally applicable and places a burden on religious conduct, I would apply strict scrutiny.
II. Reg. I.Q. Fails Strict Scrutiny
The last time this case was before this panel, I explained that in my view, because Reg. I.Q. was viewpoint discriminatory, it must be justified by a compelling governmental interest. Bronx Household IV, 650 F.3d at 59 (Walker, J., dissenting). I further explained that the government’s interest in avoiding an Establishment Clause violation was not sufficiently compelling because “the neutrality of the forum is preserved when religious speech, like nonreligious speech, is allowed. Accordingly, ... I would hold that the Board has failed to demonstrate that granting Bronx Household Sunday access to P.S. 15 for worship services would have the principal or primary effect of advancing religion or otherwise conveying a message of endorsement.” Id. at 64. My position on this point need not be repeated in full. It is as true now as it was then: the Board’s interest in enforcing Reg. I.Q. to avoid an Establishment Clause violation is not compelling because it does not violate the Establishment Clause to allow Bronx Household to worship in public school facilities made broadly available to the public on neutral terms. I would thus hold that Reg. I.Q. violates the Free Exercise Clause.[1]
The majority contends that Reg. I.Q. is permissible because the Board made a “reasonable, good faith judgment that it runs a risk of a non-frivolous charge of violation of the Establishment Clause by hosting and subsidizing the conduct of religious worship services.” Maj. Op. at 198. The Board’s belief, however, is not reasonable because Supreme Court precedent has foreclosed the possibility that an Establishment Clause violation would result if religious worship services were allowed in school facilities in these circumstances. The Supreme Court has repeatedly “rejected the position that the Establishment Clause even justifies, much less requires, a refusal to extend free speech rights to religious speakers who participate in broad-reaching government programs neutral in design.” Rosenberger, 515 U.S. at 839, 115 S.Ct. 2510 (citing Lamb’s Chapel, 508 U.S. at 393-94, 113 S.Ct. 2141; Bd. of Educ. v. Mergens, 496 U.S. 226, 248, 252, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1990); Widmar v. Vincent, 454 U.S. 263, 274-75, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981)); see also Good News Club, 533 U.S. at 112-19, 121 S.Ct. 2093. The City’s Establishment Clause justification has no greater purchase under the Free Exercise Clause than it has under the Free Speech Clause.
This conclusion is bolstered by an empirical survey submitted to this court by amicus curiae The New York City Council Black, Latino, and Asian Caucus, in support of appellees. Of the fifty largest school districts in the United States, New York City alone entirely excludes religious worship from its facilities. Brief of Amicus Curiae the New York City Council Black, Latino, and Asian Caucus at 9. Twenty-five of these school districts expressly allow religious worship in their facilities. Id. at 10. An additional eigh *209 teen implicitly allow religious worship services on the same terms as other community organizations. Id. Finally, an additional six districts permit religious worship services under certain conditions. Id. Of course, the status quo does not ipso facto render government action constitutional, but it bears on whether the City’s position is a reasonable one. It is striking that none of these other school districts appear to have the slightest concern about violating the Establishment Clause, nor have any of their community use policies been found to violate the Clause.
Even if there were a real concern that allowing religious services in public schools pursuant to a neutral policy that creates limited public fora would violate the Establishment Clause, and even if Reg. I.Q. were intended to address that problem, Reg. I.Q. would still fail strict scrutiny because it is impermissibly underinclusive to serve that interest. See Lukumi, 508 U.S. at 546, 113 S.Ct. 2217. Reg. I.Q. permits extensive religious conduct in public schools, such as a Quaker meeting service or a Buddhist meditation service, so long as it is not following a prescribed order or led by an ordained official. See Bronx Household IV, 650 F.3d • at 56 (Walker, J., dissenting).
Moreover, as the majority in Bronx Household IV made clear:
The “religious worship services” clause does not purport to prohibit use of the facility by a person or group of persons for “worship.” What is prohibited by this clause is solely the conduct of a particular type of event: a collective activity characteristically done according to an order prescribed by and under the auspices of an organized religion, typically but not necessarily conducted by an ordained official of the religion.
Id. at 37. Indeed, Reg I.Q. “prohibits use of school facilities to conduct worship services, but does not exclude religious groups from using schools for prayer, singing hymns, religious instruction, expression of religious devotion, or the discussion of issues from a religious point of view.” Id. at 38. A regulation that' bans worship services but not worship in any of its manifestations is thus not sufficiently tailored to accomplish the interest that the School Board has advanced, namely, avoiding the risk of being perceived as establishing religion.
‡ ‡ ‡ $
This case presents substantial questions involving the contours of both religion clauses and the Free Speech Clause of the First Amendment, the resolution of which are ripe for Supreme Court review. In the meantime, because the “First Amendment mandates governmental neutrality between religion and religion, and between religion and nonreligion,” Epperson v. Arkansas, 393 U.S. 97, 104, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968), I respectfully dissent.

. Because I believe that Reg. I.Q. violates the Free Exercise Clause, I would not reach the district court's additional holding that Reg. I.Q. "calls for official and continuing surveillance leading to an impermissible degree of government entanglement with religion, in violation of the Establishment Clause." Bronx Household, 876 F.Supp.2d at 445 (internal quotation marks and alterations omitted).